442 A.2d 213

The **THOMAS MERTON CENTER, a nonprofit Pennsylvania Corporation, and the Stop the B–1 Bomber Task Force of the Thomas Merton Center, an unincorporated nonprofit association,**

v.

**ROCKWELL INTERNATIONAL CORPORATION, a corporation, and Crosby M. Kelly, an individual, Appellants.**

**Appeal of Crosby M. KELLY.**

Supreme Court of Pennsylvania.

Argued Sept. 15, 1981.

Decided Dec. 17, 1981.

Reargument Denied Jan. 29, 1982.

James D. Morton, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, for Crosby M. Kelly.

Joseph A. Katarinci, Thomas R. Johnson, Kirkpatrick, Lockhart, Johnson & Hutchinson, Pittsburgh, for Rockwell Intern. Corp.

Vincent A. Colianni, Parmelee, Miller, Welsh & Kratz, Pittsburgh, for Thomas Merton Center, etc.

Before O'BRIEN, C. J., and ROBERTS, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Rockwell International Corporation is the prime contractor for the B–1 bomber project. Appellant Crosby M. Kelly was Vice-President of Communications for Rockwell. They appeal from an order of the Superior Court which reversed an order of the Court of Common Pleas of Allegheny County dismissing a complaint in libel filed by appellee, the Thomas Merton Center. Appellee is a non-profit Pennsylvania corporation, some of whose members actively campaigned against the United States government's proposed development of the B–1 bomber.

The trial court granted relief to appellants on the ground that the challenged publication was not defamatory as a matter of law. In reversing, the Superior Court held that the article was capable of carrying a defamatory meaning. Because we agree with the trial court that the statements attributed to appellant are not defamatory as a matter of law, we reverse the order of the Superior Court.

Appellee's complaint alleges that a newspaper article published by the Pittsburgh Post-Gazette on December 12, 1976, "intended to convey, and did convey to the community at large, the impression that members of the Thomas Merton Center . . . were Communist sympathizers, associated with Communists or were in fact Communists and . . . was calculated to, and did, hold [Merton] up to public scorn, hatred, [and] ridicule." Appellants denied these allegations and were granted judgment on the pleadings.

The challenged publication follows in its entirety:

## B1 FOES LINKED TO SOVIET FUNDS
### By the Associated Press

A top official of Rockwell International, prime contractor for the B1 bomber, says he's convinced the Soviet Union is secretly funding opponents of the controversial weapons project.

"Oh absolutely, oh sure," responded Crosby M. Kelly, vice president of communications, when asked during a lengthy interview if the Soviets were providing funds.

Speaking from his office on the 54th floor of Rockwell headquarters in Pittsburgh last Thursday, Kelly said the firm at one time began a study to establish the degree to which the Soviets are funding the anti-bomber campaign.

"We called it off—and I want to propose that we pick it up again," he said.

Kelly offered no specific documentation for Soviet activity in the B1 controversy, but he said the Institute for the Study of Conflict in London supports his thesis in general.

Yesterday, when Kelly learned of The Associated Press' imminent story, he called from California to disclaim that he was speaking as a company official.

"That's pretty dramatic stuff. I have no documentation to establish proof of one dime of their funding," he said.

But Kelly did not deny that he believes Soviets are involved financially. "Sure, undoubtedly they are. I say that, but not from any position of authority."

Jamie Lewontin, coordinator of the Clergy and Laity Concerned, a New York-based group Kelly said was leading opposition to the project, called Kelly's position "laughable."

"I am convinced we're getting no funds from the Soviet Union," Lewontin said, adding that the organization received an average of $15 from individuals through a mail order appeal.

"If there's any (Soviet funding), it certainly isn't an appreciable amount," he added.

"I can't understand why he would say that unless it's to discredit us," responded Stella Smetanka, assistant director of the Thomas Merton Center here, another group which Kelly singled out.

Kelly, who calls himself an amateur student of Soviet affairs, said during the interview last week that the anti-B1 bomber efforts are being led by the Clergy and Laity Concerned and the American Friends Service Committee.

To sustain its complaint in libel, appellee must establish that the challenged publication is defamatory. Act of August 21, 1953, P.L. 1291, § 1, formerly 12 P.S. § 1584(a), now 42 Pa.C.S. § 8343(a)(1). Under Pennsylvania law,

" '[a] communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.' "

*Birl v. Philadelphia Electric Co.*, 402 Pa. 297, 303, 167 A.2d 472, 475 (1960), quoting *Restatement of Torts* § 559 (1938). Accord, *Baird v. Dun & Bradstreet, Inc.*, 446 Pa. 266, 285 A.2d 166 (1971); *Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 273 A.2d 899 (1971); *Cosgrove Studio & Camera Shop, Inc. v. Pane*, 408 Pa. 314, 182 A.2d 751 (1962); Restatement (Second) of Torts § 559 (1977). It is the function of the court to determine whether the challenged publication is capable of a defamatory meaning. If the court determines that the challenged publication is not capable of a defamato-

ry meaning, there is no basis for the matter to proceed to trial. Restatement (Second) of Torts, supra, § 614(1). Accord, *Corabi*, supra; *Volomino v. Messenger Publishing Co.*, 410 Pa. 611, 189 A.2d 873 (1963); *Cosgrove*, supra.

In this case, the entire controversy centers on the interpretation of the accusation in the first paragraph of the article that the Soviet Union was "secretly funding" opponents of the B–1 bomber. Joining this statement with the penultimate paragraph of the article, where Kelly is quoted as identifying the Thomas Merton Center as one of the groups opposed to the B–1 bomber project, appellee reads the entire article to charge that the Thomas Merton Center was an agent of the Soviet government.

■ If these two paragraphs of the article constituted the entire story published by the Post-Gazette, the innuendo urged by appellee might be reasonable. However, "[w]ords which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable." Restatement (Second) of Torts, supra, § 563 Comment d. Thus, we must consider the full context of the article to determine "the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." *Corabi*, supra, 441 Pa. at 447, 273 A.2d at 901, quoting *Boyer v. Pitt Publishing Co.*, 324 Pa. 154, 157, 188 A. 203, 204 (1936).

Here, Kelly's allegations focus on the purported actions of the Soviet Union and not those of appellee. For example, Kelly responded "[o]h, absolutely, oh sure" when he was asked if "the Soviets were providing funds" to opponents of the B–1 bomber. Kelly, who described himself as "an amateur student of Soviet affairs" also stated that Rockwell had once conducted a study to investigate "the degree to which the Soviets are funding the anti-bomber campaign." Futher, while Kelly admitted he could provide "no specific documentation for Soviet activity" he "did not deny that he believes Soviets are involved financially." The Thomas Mer-

ton Center is not even mentioned until the next to last paragraph in the article.

Moreover, absent here is any statement by appellant Kelly that either alleges or can reasonably be read to allege that the Thomas Merton Center had knowledge of the purported funding. Indeed, even the coordinator of the organization singled out by Kelly as "leading opposition to the project" understood Kelly's remarks to mean that his group was merely the unwitting recipient of Soviet funds: " 'I am convinced we're getting no funds from the Soviet Union.... If there's any (Soviet funding), it certainly isn't an appreciable amount.' "

■ Although it is true that a publication is defamatory if it ascribes to another "conduct, character or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession" Restatement (Second) of Torts, supra, § 573 (1977), the Thomas Merton Center is not clothed with any special status which would make the suggestion of unknowing receipt of funds harmful to its reputation. Our case law makes clear that Kelly's failure to charge or imply appellee's knowing participation in the purported Soviet funding is fatal to appellee's effort to establish that Kelly's statements are actionable. Thus, here this Court has held a letter actionable where the letter stated that the plaintiff had consciously participated in various communist organizations and had attended school at the Young Communist League. *Matson v. Margiotti*, 371 Pa. 188, 88 A.2d 892 (1952). See also *Wolston v. Reader's Digest Ass'n*, 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979) (plaintiff labeled "Soviet Agent"). On the other hand, in *Clark v. Allen*, 415 Pa. 484, 204 A.2d 42 (1964), the statement that a United States Senator's voting record reflected "communist tendencies" was held not to be libelous as a matter of law. The statement in *Clark*, read in the worst possible light, simply implied that Clark had unsuspectingly aided communism through his Senate votes.

So too, here, the challenged publication can at most be read to mean that the Thomas Merton Center was the unknowing recipient of Soviet funds. This article can not be rendered libelous "by an innuendo which puts an unfair and forced construction on the interpretation of the publication." *Sarkees v. Warner-West Corp.*, 349 Pa. 365, 369, 37 A.2d 544, 546 (1944). An innuendo must be warranted, justified and supported by the publication. *Bogash v. Elkins*, 405 Pa. 437, 176 A.2d 677 (1962). Because it is unreasonable to infer from the entire article that appellee was actively and knowingly aiding the Soviet Union, the statements attributed to appellant Kelly are not defamatory as a matter of law.

Accordingly, the order of the Superior Court is reversed and judgment in favor of appellants is reinstated.

NIX, J., did not participate in the consideration or decision of this case.