587 A.2d 1

Gisele MATHIAS, William J. Colgan and George Sholly, Appellants,

v.

Paul CARPENTER and The Morning Call and Times Mirror, Inc., Appellees.

Superior Court of Pennsylvania.

Argued Sept. 18, 1990.

Filed Feb. 19, 1991.

Richard J. Orloski, Allentown, for appellants.

Malcolm J. Gross, Allentown, for appellees.

Before CAVANAUGH, WIEAND and HUDOCK, JJ.

WIEAND, Judge:

The issue in this appeal is whether a jury could find defamatory an article appearing in a daily newspaper which contrasted the newspaper's decision to publish a photograph of school directors who were smiling as they left a district justice's office after some of them had been found guilty of violating the Pennsylvania Sunshine Law, and the publication of a photograph of hardened criminals who smile to show contempt of the law. The trial court held that the published material could not be found defamatory and sustained preliminary objections in the nature of a demurrer to the plaintiff's complaint. After careful review, we affirm.

In reviewing an order sustaining preliminary objections in the nature of a demurrer, we view the allegations of the complaint as true and draw therefrom all favorable inferences which are reasonably deducible. *Dietrich Industries, Inc. v. Abrams,* 309 Pa.Super. 202, 208, 455 A.2d 119, 122 (1982). We are not required, however, to accept appellants'

conclusions or averments of law. *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 623, 470 A.2d 86, 91 (1983); *Mudd v. Hoffman Homes for Youth, Inc.*, 374 Pa.Super. 522, 524, 543 A.2d 1092, 1093 (1988). We will affirm an order sustaining a defense demurrer only in cases where the plaintiff is clearly unable to state a claim on which relief can be granted. *Wicks v. Milzoco Builders, Inc., supra; Philmar Mid–Atlantic, Inc. v. York St. Assoc.*, 389 Pa.Super. 297, 301, 566 A.2d 1253, 1254 (1989).

On December 7, 1988, a picture was published in the Allentown Morning Call which depicted three smiling members of the Lehighton School Board as they left a magisterial hearing at which two of them had been found guilty of violating the Pennsylvania Sunshine Law.[1] On the following day, December 8, 1988, a column written by Paul Carpenter was published in the Morning Call as follows:

We in the newspaper business sometimes do things we regret, and this is one of those times.

Yesterday we had a story with a headline that said "Judge: School officials broke Sunshine Law." Accompanying the story was a picture of three school board members leaving the hearing, including two who had been found guilty. All three wore big smiles.

The part I regret is publishing the picture of those smiles.

It's one thing to portray a hardened criminal smiling as he displays his contempt for law. It's quite another when the people who are smiling—just after being found guilty of breaking the law—are the supposed leaders of a community's education establishment.

What kind of message does that convey to the young people they are responsible for educating?

The three school board members, Gisele Mathias, William J. Colgan and George Sholly, contending that they had been libeled, filed an action against Carpenter and The Morning Call for damages. They complained that their reputations

---

1. On appeal to the Court of Common Pleas of Carbon County, the school board members were found not guilty.

as respected citizens and community leaders had been impugned by being compared to hardened criminals. The trial court held that the Carpenter column was not defamatory, however, and sustained preliminary objections in the nature of a demurrer to the complaint. The school directors appealed. They contend that Carpenter's language implied falsely that they had committed heinous crimes and had demonstrated contempt for the law.[2]

"It is the function of the [trial] court to determine whether the challenged publication is capable of a defamatory meaning. If the court determines that the challenged publication is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial." *Thomas Merton Center v. Rockwell International Corp.*, 497 Pa. 460, 464–465, 442 A.2d 213, 215–216 (1981), *cert. denied*, 457 U.S. 1134, 102 S.Ct. 2961, 73 L.Ed.2d 1351 (1982). The trial court's function was more fully defined by the Supreme Court in *Baker v. Lafayette College*, 516 Pa. 291, 532 A.2d 399 (1987), as follows:

In order for a statement to be considered libelous or slanderous, the trial court must, in the first instance, make a determination as to whether the communication complained of can be construed to have the defamatory meaning ascribed to it by the complaining party. *Bogash v. Elkins*, 405 Pa. 437, 176 A.2d 677 (1962). In reaching this conclusion, the court must view the statements in context, *Thomas Merton Center v. Rockwell International Corporation*, 497 Pa. 460, 442 A.2d 213 (1981) *cert. denied* 457 U.S. 1134, 102 S.Ct. 2961, 73 L.Ed.2d 1351 (1982) and determine whether the statement was maliciously written or published and tended "to blacken a person's reputation or to expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession." (citations omitted). *Corabi v. Curtis Publishing Company*, 441 Pa. 432, 441, 273 A.2d 899, 904 (1971). The test to be applied in evaluating any state-

2. It is readily apparent, however, that the comparison could not have referred to William Colgan, for he was found not guilty of violating any law.

ment is "the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." *Id.*, 441 Pa. at 447, 273 A.2d at 907. A critical factor in determining whether a communication is capable of defamatory meaning then is the nature of the audience hearing the remarks *See, Beckman v. Dunn*, 276 Pa.Super. 527, 419 A.2d 583 (1980). Finally, opinion without more does not create a cause of action in libel. *Bogash v. Elkins, supra.* Instead, the "allegedly libeled party must demonstrate that the communicated opinion may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." *Beckman v. Dunn*, 276 Pa.Super. at 535, 419 A.2d at 587, citing Restatement (Second) Torts, Section 566 (1976).

*Id.* 516 Pa. at 296–297, 532 A.2d at 402. See also: *Dougherty v. Boyertown Times*, 377 Pa.Super. 462, 547 A.2d 778 (1988); Restatement (Second) of Torts § 614(1) (1977). "Statements of opinion without more are not actionable." *Malia v. Monchak*, 116 Pa.Commw. 484, 496, 543 A.2d 184, 190 (1988), citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). See also: *Dougherty v. Boyertown Times, supra,* 377 Pa.Super. at 478, 547 A.2d at 785. Compare: *Milkovich v. Lorain Journal Co.*, 497 U.S. ——, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990).

In *Dougherty v. Boyertown Times, supra,* the Superior Court said:

Whether a particular statement constitutes a fact or an opinion is a question of law for the trial court to determine. *Veno v. Meredith*, 357 Pa.Super. 85, 92, 515 A.2d 571, 575 (1986) *quoting Braig v. Field Communications*, 310 Pa.Super. 569, 579, 456 A.2d 1366, 1372 (1983) *cert. denied* 466 U.S. 970, 104 S.Ct. 2341, 80 L.Ed.2d 816 (1984). In *Braig* this Court adopted Section 566 of the Restatement (Second) of Torts, *supra,* entitled Expression of Opinion, which provides as follows:

A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.

Comment (b) of § 566 explains the two types of expressions of opinion:

(1) The pure type—which "occurs when the maker of the comment states the facts on which he bases his opinion of the plaintiff and then expresses a comment as to the plaintiff's conduct, qualifications or character."

(2) The mixed type—which "while an opinion in form or context, is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication. Here the expression of opinion gives rise to the inference that there are undisclosed facts that justify the forming of the opinion expressed by the defendant."

Restatement (Second) of Torts, § 566, comment (b).

*Id.,* 377 Pa.Super. at 476–477, 547 A.2d at 785. Comment (c) of § 566 of the Restatement explains further the distinction as follows:

A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is. But an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed facts on which the opinion is based, is treated differently. The difference lies in the effect upon the recipient of the communication. In the first case, the communication itself indicates to him that there is no defamatory factual statement. In the second, it does not, and if the recipient draws the reasonable conclusion that the derogatory opinion expressed in the comment must have been based on undisclosed defamatory facts, the defendant is subject to liability.

After careful study, we are unable to ascribe a defamatory meaning to the Carpenter column. The language of the column recites that two board members were depicted as smiling after they had been found guilty of violating the Sunshine Law. This was clearly factual. To regret publication of the picture because the persons depicted were leaders of the community's educational establishment is purely the opinion of the writer. So, too, is the implication that smiles under such circumstances had an even more unfortunate message than the portrayal of a hardened criminal who displays contempt for the law. The column, when carefully read, does not state, either expressly or by implication, that the school directors were hardened criminals or that they had committed heinous crimes. At most, it reflects the opinion of the writer that appellants' smiles, under the circumstances, were more likely to cause unfortunate consequences than the smile of a hardened criminal who displayed his contempt for the law. Such a statement could possibly be "actionable only if it 'may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion.' *Veno [v. Meredith]*, *supra* [357 Pa.Super. at 92], 515 A.2d at 575, *quoting Beckman [v. Dunn]*, *supra* [276 Pa.Super. at 535], 419 A.2d at 587, citing Restatement (Second) of Torts, § 566." *Dougherty v. Boyertown Times, supra,* 377 Pa.Super. 462, at 478, 547 A.2d at 785.

Here, however, all the facts upon which the author based his opinion were disclosed in the second paragraph of the column. There it was plainly stated that plaintiffs had been photographed while smiling after having attended a judicial hearing where it was determined that two of the three persons identified in the photograph had violated the Sunshine Law. The author thereafter did nothing more than contrast the decision to publish photographs of hardened criminals with the newspaper's decision to publish the photograph of the plaintiffs. The reasonable reader, having access to the facts on which the comparison was based, could decide for himself or herself whether the facts sup-

ported the writer's comparison. The reader, therefore, was provided with adequate facts to assess the validity of the opinion expressed by Paul Carpenter. Under these circumstances, the expression of opinion was not actionable.

We conclude, for these reasons, that the Carpenter column was not capable of a defamatory meaning and that the trial court was correct when it so held.

Affirmed.