641 A.2d 607

Frank J. PARANO, Appellant,

v.

James F. O'CONNOR, 21st Century Health Corporation–USA, Inc. A/K/A 21 USA and/or 21 PA, Daryl Nerl and the Pottsville Republican.

Superior Court of Pennsylvania.

Argued Dec. 8, 1993.

Filed May 11, 1994.

Peter G. Loftus, Scranton, for appellant.

David L. Zicherman, Philadelphia, for appellees.

Before ROWLEY, President Judge, and WIEAND and BROSKY, JJ.

ROWLEY, President Judge:

Frank J. Parano, plaintiff in the trial court, appeals from the order sustaining preliminary objections, in the nature of a demurrer, filed by the defendants in the trial court. On appeal, Parano challenges the trial court's dismissal of all four counts in his complaint, and argues that the trial court erred

in not allowing him to amend his pleadings.[1] Upon review, we affirm.[2]

This action arose after statements regarding appellant, Frank Parano, were allegedly made by James F. O'Connor ("O'Connor"), a vice president of 21st Century Health Corporation–USA, Inc. ("21 USA"), and published in the Pottsville Republican in an August 21, 1991 news article written by Daryl Nerl. The offending statements pertained to the conduct of appellant, in his capacity as the administrator of Coledale State General Hospital, toward 21 USA which was attempting to acquire the hospital. The article quoted O'Connor as stating:

i) "It was made pretty clear right from the beginning that [appellant] was going to be less than helpful in anything [21–USA] put together."

ii) Appellant "would not return 21–USA's telephone calls and was uncooperative in providing information the firm needed to formulate a proposal."

iii) "We were very disappointed that [appellant] took an adversarial role with us."

Appellant also complains of statements later made by O'Connor at a December 9, 1991 meeting, to wit: "[Appellant] chose to be our adversary, chose not to share information with us."

On July 13, 1992, appellant filed a complaint against the above-named defendants/appellees, asserting claims of defa-

---

1. The issue of whether appellant should amend his complaint was raised by appellee O'Connor and not by appellant. O'Connor included in his preliminary objections a motion for a more specific pleading on the defamation claim in the event his demurrer was overruled. The trial court overruled O'Connor's motion for a more specific pleading as moot because his demurrer was sustained and all of the claims were dismissed.

2. Appellant does not include in his brief a statement of jurisdiction, a statement of the questions involved, and a short conclusion stating the precise relief sought, as required by Pa.R.A.P. 2111. Although the failure to comply with the requirements of the rule can result in the suppression of the brief or quashing of the appeal, we find that the noncompliance was not so egregious as to inhibit effective appellate review. We caution appellant to abide by the rule in the future, however.

mation, invasion of privacy (false light), intentional infliction of emotional distress, and interference with contractual relations. As stated above, this appeal is from the dismissal of these claims against each of the appellees.

On review, we must determine whether the complaint's factual allegations, if proven, would be sufficient to entitle appellant to relief. *Gordon v. Lancaster Osteopathic Hospital Assoc.*, 340 Pa.Super. 253, 260, 489 A.2d 1364, 1368 (1985). In making this determination, we accept as true all well-pleaded facts and the reasonable inferences to be drawn therefrom. *Id.* We have considered each of the four dismissed claims, and affirm because it is clear that the law does not permit appellant's recovery. *Id.*

First, with respect to the defamation claim, appellant was required to plead, and to ultimately prove, the defamatory character of the statements made. 42 Pa.C.S.A. § 8343(a)(1); *Thomas Merton Center v. Rockwell Int'l Corp.*, 497 Pa. 460, 442 A.2d 213 (1981), *cert. denied*, 457 U.S. 1134, 102 S.Ct. 2961, 73 L.Ed.2d 1351 (1982). A communication is defamatory if it tends to deter third persons from associating with the subject of the communication or to harm his reputation by lowering him in the estimation of the community. *Neish v. Beaver Newspapers, Inc.*, 398 Pa.Super. 588, 591, 581 A.2d 619, 621 (1990), *appeal denied*, 527 Pa. 648, 593 A.2d 421 (1991). Only after the trial court has determined as a matter of law that the communication is capable of a defamatory meaning does the jury consider the defamatory nature of the communication. *Id.*

The trial court determined, and we agree, that the statements made and published about appellant were not capable of a defamatory meaning, in part because they were "far less offensive than other characterizations that Courts in Pennsylvania ... have found to be non-defamatory." Opinion of Trial Court at 4 (citing case examples where individuals were referred to as "racist" and "anti-semitic"). The court also correctly reasoned that the statements might have been annoying or embarrassing to appellant, but that "[p]ersonal

annoyance and embarrassment ... are not the sorts of injury that will support a defamation claim." *Id.* at 3.

The court also dismissed the defamation claim on the ground that the statements allegedly made by O'Connor were expressions of his opinion, which are not actionable unless they imply undisclosed, false and defamatory facts. *Id.* at 5 (citing *Mathias v. Carpenter*, 402 Pa.Super. 358, 362–63, 587 A.2d 1, 3 (1991), *appeal denied*, 529 Pa. 650, 602 A.2d 860 (1992)). O'Connor allegedly commented that appellant was adversarial, less than helpful, and uncooperative. These statements only revealed O'Connor's subjective interpretation, or opinion, of appellant's response to 21 USA's efforts to purchase Coledale Hospital. In addition, the facts upon which O'Connor based his opinion, i.e., that appellant would not return phone calls and would not provide information necessary to facilitate the purchase, were *disclosed;* therefore, the opinion did not imply undisclosed false facts. Because we agree that the statements were not defamatory and were only an expression of opinion, appellant's defamation claim was properly dismissed.

■■ Second, to state a cause of action for invasion of privacy (false light), i) the publicity must place another "before the public in a false light" which would be "highly offensive to a reasonable person," and ii) the one who gave publicity to the matter must have "had knowledge of or acted in reckless disregard as to ... the false light in which the other would be placed." *Neish*, 398 Pa.Super. at 598, 581 A.2d at 624. The trial court concluded, in part, that the publicity in this case would not be highly offensive to a reasonable person. *See* Restatement of Torts 2d, Invasion of Privacy § 652E, comm. b (publicity must be highly objectionable, unreasonable, and a major misrepresentation). We agree that referring to a person as "adversarial," "uncooperative," and "less than helpful," cannot be considered "highly offensive."

With respect to 21–USA's attempted acquisition of the state hospital—an acquisition which concerned the public's interest, the parties should have expected that through their dealings

with one another, each would form an opinion of the other's behavior and that these opinions might be disclosed to the public. Neither party can be held liable for forming and expressing these opinions, unless the alleged behavior upon which the opinion was based did not actually occur, or the opinion was far out of proportion with the facts. *Cf. Curran v. Children's Service Center*, 396 Pa.Super. 29, 578 A.2d 8 (1990), *appeal denied*, 526 Pa. 648, 585 A.2d 468 (1990) (publicity not highly offensive when employee's performance is examined and evaluated by supervisor, which is to be expected). Considering that the trial court correctly classified appellant as a public figure with respect to his administration of the hospital, appellant was precluded from complaining that his activities as an administrator had been scrutinized and evaluated. *See Neish*, 398 Pa.Super. 588, 598, 581 A.2d 619, 624–25 (public figure relinquished insulation from scrutiny of his public affairs). Therefore, appellant's claim that the publicity placed him in a false light was properly dismissed.

■ Third, with respect to the claim for interference with contractual relations, appellant did not plead, as required, an existing or prospective contract with which appellees interfered. Appellant alleged the following in his complaint:

30. The Defendants ... caused the false accusations and allegations to be circulated in the community and to be transmitted to potential employers.

31. The Defendants acted intentionally to harm any potential contractual relationships that the Plaintiff may have had with future employers....

32. The conduct of the Defendants ... was such that they knew or should have known that they would prevent the Plaintiff from finding alternate employment within the area....

Complaint at 7–8. An existing contract is not at issue, nor is the speculation of potential employment enough to satisfy the requirement for a prospective contract. As the trial court notes, the averments must be sufficient to allege a "reasonable likelihood or probability that an anticipated business arrange-

ment would have been consummated." *Cloverleaf Develop. v. Horizon Financial,* 347 Pa.Super. 75, 82, 500 A.2d 163, 167 (1985). Therefore, the claim of intentional interference with contractual relations was properly dismissed.

Last, the trial court dismissed appellant's claim of intentional infliction of emotional distress based on its accurate determination that "[t]he publication of an article describing a public official's conduct as 'less than helpful,' 'uncooperative,' and 'adversarial' does not rise to the requisite level of outrageous conduct" essential for an actionable claim. Opinion of Trial Court at 8–9. We therefore agree that appellant has failed, as a matter of law, to state a claim for intentional infliction of emotional distress, and conclude that the claim was properly dismissed.

Appellant also argues that the trial court erred in not allowing him to amend his pleadings. It is true that a motion to amend the complaint can be made at any stage in the case. However, appellant has not suggested how he would amend his complaint in order to alleviate its deficiencies and successfully state the causes of action now dismissed. For the foregoing reasons, we affirm the order of the court.

Order affirmed. Jurisdiction relinquished.