# Cassell v. Mount Joy Mennonite Church

C.P. of Lancaster County, no. 3824 of 1992.

*Maryfrances Cassell,* pro se, plaintiff.
*Vivian B. Narehood,* for defendants.

ALLISON, *J.,* April 9, 1998—This matter is before the court on defendants' motion for summary judgment. for the reasons set forth below, defendants' motion is granted.

The facts giving rise to this cause of action are as follows: plaintiff Maryfrances Cassell, a member of the Christian Science faith, moved to the Mount Joy area in 1948. At that time, plaintiff was a professional musician; she later became a public accountant and a real estate broker. In approximately 1962, plaintiff met defendants Florence Miller and Martha Ebersole, who invited plaintiff to attend a service at the Mount Joy Mennonite Church. While plaintiff accompanied these women to the church in order to learn about their religion, she remained a member of the Christian Science faith. Defendant Miller introduced plaintiff to Arlene Miller, her sister, who was a piano teacher. Eventually, Ms. Miller and plaintiff decided to establish a studio where they could collaborate as piano teacher and artistic director, respectively. However, Ms. Miller's family discouraged this intended collaboration, and hostility developed. Despite the family's resistance, the ministry team at the church persuaded plaintiff to resume the plan of establishing a professional relationship with Ms. Miller in approximately 1964. This decision resulted in a significant misunderstanding between the ministry team and the Miller family. Throughout the duration of this professional relationship, a hostile faction in

the church was encouraging Ms. Miller to disband the professional relationship with plaintiff and sought to cut off communication between them. The relationship ultimately ended in 1980, and numerous lawsuits followed.

Defendant Ervin Stutzman became minister of the church in 1983. On August 18, 1991, the church held a regular Sunday morning service. The service included a scripture reading and a sermon delivered by defendant Stutzman, which dealt with how any person, and particularly church leaders, may be drawn into patterns of misunderstanding or wrongdoing through the pull of temptation and human weakness. Plaintiff was not mentioned or referenced in the scripture and sermon portions of the service. Following the sermon, there was a time of open sharing. Defendant Stutzman referenced the past relationship between plaintiff and Ms. Miller, acknowledged that the church ministry team betrayed the Miller family and others, and stated that they had tried to make right any wrongs that were committed against plaintiff, who had also felt betrayed. When the congregation was given an opportunity to respond, Ms. Miller, defendant Robert Garber and defendant Florence Miller spoke on this topic.

Plaintiff filed a praecipe for writ of summons on August 17, 1992 against the above-named defendants. On October 10, 1995, plaintiff filed a complaint which alleged that defendants slandered her during the August 18, 1991 church service. Plaintiff then filed an amended complaint on December 6, 1996, which added a breach of contract claim. Defendants filed the instant motion for summary judgment on August 8, 1997. The court heard oral argument on the motion on January 27, 1998.

The standard used in reviewing a motion for summary judgment is well established:

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2 (1996).

Furthermore, summary judgment is proper "where the pleadings, depositions, answers to interrogatories, admissions of record and affidavits on file support the court's conclusion no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Goldberg v. Delta Tau Delta,* 418 Pa. Super. 207, 211, 613 A.2d 1250, 1252 (1992). The record is reviewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Ertel v. Patriot-News Co.,* 544 Pa. 93, 98-99, 674 A.2d 1038, 1041 (1996) (citing *Pennsylvania State University v. County of Centre,* 532 Pa. 142, 144-45, 615 A.2d 303, 304 (1992)).

Plaintiff's amended complaint contains counts sounding in defamation and in breach of contract. In the defamation count, plaintiff alleges that defendant Stutzman, as an agent for the church and as the representative of the other defendants, engaged in a "prearranged combined utterance of untrue and defamatory

statements . . . knowing the same to be false, to the general public." Amended complaint, at paragraph 11. In an action for defamation, plaintiff has the burden of proving: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. 42 Pa.C.S. §8343(a) (West 1982). Whether challenged communications are capable of a defamatory meaning is a question of law which the court must determine in the first instance. *Thomas Merton Center v. Rockwell International Corp.,* 497 Pa. 460, 464, 442 A.2d 213, 215 (1981). If the court determines that the challenged communication is not capable of a defamatory meaning, there is no basis on which to proceed to trial. *Id.* at 464-65, 442 A.2d at 215-16 (citing Restatement (Second) of Torts §614(1) (1977)).

Under Pennsylvania law, a communication is defamatory if it tends to deter third persons from associating with the subject of the communication or to harm the subject's reputation by lowering the subject in the estimation of the community. *Parano v. O'Connor,* 433 Pa. Super. 570, 574, 641 A.2d 607, 609 (1994). Injury to reputation is judged by the reaction of other persons in the community; it is not judged by the party's self-estimation. *Rybas v. Wapner,* 311 Pa. Super. 50, 56, 457 A.2d 108, 110 (1983). Rather, the court must consider "the effect the [communication] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." *Dougherty v. Boyertown Times,* 377 Pa. Super. 462, 472, 547 A.2d 778, 783 (1988).

In the instant case, plaintiff alleges that the essence of the statements made during the August 18, 1991 church service was that she had satanically manipulated all of the Mennonite ministers for the evil purpose of entrapping Ms. Miller in order to abuse her mentally, physically and financially. Amended complaint, at paragraph 13. Specifically, plaintiff alleges that the following defamatory statements were made: Christian Science is of the devil; plaintiff, a Christian Scientist, is therefore dangerous; plaintiff has sinister and ulterior motives and is not to be trusted; plaintiff is "unequally yoked," the evil one to be "shunned" and ostracized; plaintiff had wrongly influenced Henry F. Garber to act unilaterally to allow her to lead Ms. Miller astray; plaintiff had satanically manipulated all of the Mennonite officials for an evil purpose; plaintiff had satanically manipulated and entrapped Ms. Miller; and plaintiff had caused Ms. Miller to sin. *Id.* at paragraph 15.[1]

The court reviewed an official transcript of the church service which was prepared from an audiotape of the service.[2] This review revealed that only statements regarding an "unequal yoke" and an apparent "manipulation" were made. First, defendant Stutzman stated:

---

1. In addition, plaintiff alleges that defendant Stutzman made defamatory statements about her in a May 7, 1992 letter to Solomon Yoder and that defendant Sherer made defamatory statements about her in an April 13, 1992 letter to Solomon Yoder. The court has reviewed the letters and finds that they are not capable of defamatory meaning.

2. Because of the length of the church service, the text of the service was not made part of this opinion. Furthermore, pursuant to Judge Allison's order of July 11, 1997, plaintiff was precluded from denying that the transcript attached to defendants' answer and new matter constituted the entirety of all relevant communication at the church service at issue.

"Now, we now understand that these two women [plaintiff and Ms. Miller] were unequally yoked together. Christian Science beliefs and our Mennonite Christian beliefs diverge at some significant points." Transcript of service, page 13. The court finds that the average church member in attendance would not have found that this statement was made to disparage plaintiff; rather, as defendant Stutzman went on to explain, these two religions are simply grounded on different theologies. Second, the only mention of manipulation is Ms. Miller's statement that: "[M]y determination to have my own way, the anxiety of my family and what appears to me as a manipulation of many by Maryfrances was a potent breeding ground for the unGodly confusion that was present." Transcript of service, page 15. At most, this statement is an opinion given by Ms. Miller, who is not a defendant in the instant case. The court finds that neither of these statements would tend to harm plaintiff's reputation by lowering her in the estimation of the community. See *Parano,* 433 Pa. Super. at 574, 641 A.2d at 609. Thus, neither of these statements is capable of a defamatory meaning.

The heart of plaintiff's claim for defamation relies upon a theory of defamation by innuendo. The Supreme Court has stated: "[t]he purpose of an innuendo . . . is to define the defamatory meaning which the plaintiff attaches to the words; to show how they come to have that meaning and how they relate to the plaintiff[.] But it cannot be used to introduce new matter, or to enlarge the natural meaning of the words, and thereby give to the language a construction which it will not bear[.] . . . If the words are not susceptible of the meaning ascribed to them by the plaintiff and do not sustain the innuendo, the case should not be sent to a jury . . . ." *Livingston v. Murray,* 417 Pa. Super.

202, 214-15, 612 A.2d 443, 449 (1992) (quoting *Sarkees v. Warner-West Corp.*, 349 Pa. 365, 368-69, 37 A.2d 544, 546 (1944)).

Alleged defamatory statements cannot be rendered slanderous "by an innuendo which puts an unfair and forced construction on the interpretation" of the communication. *Thomas Merton Center*, 497 Pa. at 467, 442 A.2d at 217 (quoting *Sarkees*, 349 Pa. at 369, 37 A.2d at 546). Rather, an innuendo must be warranted, justified and supported by the communication. *Id.* at 467 (citing *Bogash v. Elkins*, 405 Pa. 437, 176 A.2d 677 (1962)).

During the August 18, 1991 service, defendant Stutzman read the account of the serpent in the third chapter of Genesis and the story of the prodigal son. Plaintiff argues that there is a strong inference that defendants were actually calling her the "serpent," as there were references to her "manipulating" people and to the ministry team "unwittingly" taking certain actions. Plaintiff claims that the Mennonite congregation was aware of the defamatory meaning of the scriptures, sermon and responses, and that the name "Maryfrances" is so ingrained in the Mennonite vocabulary as the "evil one" that the very mention of her name in this community has become inflammatory. Finally, plaintiff asserts that the scripture and sermon were selected to apply to Ms. Miller as the "prodigal" returning from the evil influence of plaintiff. While this court's critical determination is the effect of the communication in the mind of the average member of the community among whom it is intended to circulate, plaintiff has failed to offer an affidavit or the deposition testimony of any person who was in attendance at the August 18, 1991 church service. Plaintiff's interpretation is supported only by her written analysis of the service and her own affidavit.

Defendants' construction of the service is that Defendant Stutzman read the biblical accounts of the serpent and of the prodigal son. He then discussed how any person, and particularly church leaders, may be drawn into patterns of misunderstanding and wrongdoing through the pull of temptation and human weakness. After the sermon, defendant Stutzman shared that he and others in the ministry team had misunderstood the concerns of the Miller family concerning Ms. Miller's relationship with the plaintiff, and had at times betrayed the Miller family. Defendant Stutzman recognized that part of the misunderstanding resulted from differences in plaintiff's Christian Science beliefs and Ms. Miller's Mennonite Christian beliefs. Defendant Stutzman further acknowledged that plaintiff had also felt betrayed at times. He and the church leadership took the blame for the problems resulting from the multiple litigation and apologized to the congregation for becoming involved in the relationship between plaintiff and Ms. Miller. Defendant Stutzman then invited congregation members to share. Defendant Robert Garber asked for forgiveness from the Miller family on behalf of his deceased father. Defendant Florence Miller thanked God for being with her family over the past years of problems and hardships.

Reading the transcript of the church service on the whole, the court finds that plaintiff's interpretation is not justified by the communications at the church service.[3] Defendant Stutzman stated in his affidavit that the sermon was intended for teaching and counsel for daily living, and that the average church member in attendance

3. Plaintiff makes much of the fact that some of the comments made at the August 18, 1991 service were "pre-planned." The court does not find this to be relevant to whether or not these statements were defamatory in nature.

would have understood that the application of the sermon dealt with the ministers and the Miller family, and not with plaintiff. While it is clear that plaintiff was mentioned during the service, reading the transcript in its entirety reveals that the intent was not to lower plaintiff in the estimation of the community. Plaintiff's contention that defendants actually were referring to her when discussing the "serpent," for instance, simply enlarges the meaning beyond what it can bear. These statements are not capable of defamatory meaning by innuendo, even by a Mennonite congregation who was aware of the prior professional relationship between Ms. Miller and plaintiff and of the prior litigation initiated by plaintiff. Therefore, plaintiff cannot sustain a cause of action for defamation.[4]

---

4. Even if the statements at issue were capable of defamatory meaning, plaintiff has failed to establish that any actual harm was caused by the defamatory statements. Although plaintiff claims that the alleged defamation so ruined her reputation that it rendered it impossible for her participate in her music studio, accounting practice, or real estate business, and that she lost the means to generate gross average annual income of $25,000, the court finds that there is no evidence to support these damages. The court reviewed plaintiff's federal income tax returns from 1986 through 1995. Plaintiff's income was substantially lower than $25,000 in 1986, five years before the alleged defamation took place. Plaintiff's highest income was in 1990, with approximately $17,000 in adjusted gross income, while the average adjusted gross income of the 1986-1990 period was substantially lower than $25,000. In fact, plaintiff's adjusted gross income was approximately $18,500 in 1995, four years after the alleged defamation.

Furthermore, pursuant to Judge Allison's order of July 11, 1997 which imposed sanctions for failure to comply with a discovery order, plaintiff is precluded from presenting any evidence of actual or anticipated loss of income as a result of any alleged actions by the defendants.

Next, in her breach of contract count, plaintiff asserts that the alleged defamatory language uttered in the August 18, 1991 church service constituted a breach of an oral contract between plaintiff and defendant Stutzman. This alleged contract, which, among other things, stated that defendants would retract slanderous statements against plaintiff, Ms. Miller and the Christian Science faith, was evidenced by a document entitled "Statement of Retractions." This document was signed by defendant Stutzman and witnessed by plaintiff on October 1, 1988.

Before the court will recognize a cause of action for breach of contract, all of the essential elements of the contract must be in existence. *PennDOT v. First Pennsylvania Bank N.A.,* 77 Pa. Commw. 551, 553, 466 A.2d 753, 754 (1983). The Superior Court has determined that contracts are enforceable where the parties have manifested an intent to be bound by the terms of the agreement, the terms are sufficiently definite, and the agreement is supported by consideration. *Johnston the Florist Inc. v. Tedco Construction Corp.,* 441 Pa. Super. 281, 291, 657 A.2d 511, 516 (1995). It is plaintiff's burden to prove by a preponderance of the evidence that a contract exists. *Viso v. Werner,* 471 Pa. 42, 46, 369 A.2d 1185, 1187 (1977). (citations omitted)

This court finds that plaintiff has not sustained this burden. A complaint similar to the one at issue was filed by plaintiff in Lancaster County in 1994; this complaint included a breach of contract count based upon the 1988 "Statement of Retractions" document and proceeded before this court. Sustaining a demurrer to the breach of contract count, the court stated: "[a]lthough the documents do reveal a dispute and some effort to resolve it, the allegation that there was in

fact a contract in place between the parties is inartfully drawn. . . . plaintiff has failed to sufficiently demonstrate the material elements of the existence of a contract." *Maryfrances Cassell v. Lancaster Mennonite Conference,* no. 2220 of 1989, memorandum opinion at 3 (C.P. Lancaster August 3, 1995), Allison, J. The Superior Court affirmed this decision, concluding that with respect to the "Statement of Retractions," plaintiff failed to plead the required elements to show the existence of a contract. *Maryfrances Cassell v. Lancaster Mennonite Conference,* 454 Pa. Super. 675, 685 A.2d 205 (1996). Therefore, under the doctrine of collateral estoppel, plaintiff is prevented from relitigating the issue of whether a contract exists. See *Day v. Volkswagenwerk Aktiengesellschaft,* 318 Pa. Super. 225, 236, 464 A.2d 1313, 1318 (1983) (stating that collateral estoppel "operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit"); *Thompson v. Karastan Rug Mills,* 228 Pa. Super. 260, 265, 323 A.2d 341, 344 (1974) (stating that collateral estoppel does not require an identity of parties, "as long as the party against whom the defense is invoked is the same").

Furthermore, plaintiff filed a similar lawsuit in York County against the Lancaster Mennonite Conference. Included in her complaint was a count for breach of contract which was based upon an alleged oral agreement entered into by the parties, and was later renewed through further oral agreement and the "Statement of Retractions" document in 1988. In sustaining preliminary objections to plaintiff's amended complaint, the York County court concluded:

"[W]e find the 'Statement of retractions' put forth by plaintiff to be binding between the parties to be

lacking any of the elements of a contract. This document is no more than an alleged acknowledgment of certain transgressions against plaintiff and an apology on the part of the Mount Joy Mennonite Church. There are no definite terms, and there is certainly no consideration to be construed from plaintiff to the Mennonite Church." Opinion, no. 93-SU-00696-01 (C.P. York April 22, 1996), Dorney, J. (affirmed by Superior Court without opinion on July 9, 1997, no. 00427 Harrisburg 1996).

Therefore, it is clear that this issue has been previously litigated and a final judgment on the merits has been entered. Moreover, the "Statement of retractions" reads at the bottom: "This paper is freely submitted as a basis for healing of our relationship. We understand that nothing within this document will be considered admissible as evidence in a court of law." From a review of the pleadings and the exhibits attached thereto, the court concludes that any discussions and the resulting "Statement of Retractions" document were merely preliminary negotiations in an effort to settle this dispute. The intent of the parties in creating this document must be honored. Consequently, plaintiff cannot sustain a cause of action for breach of contract.

Therefore, even when the record is viewed in the light most favorable to the plaintiff, the court finds that no genuine issue of material fact exists as to the defamation claim and to the breach of contract claim. Defendants are entitled to judgment as a matter of law.[5]

_____

5. Although she did not include counts for false light invasion of privacy and for shunning in her amended complaint, plaintiff argues that the pleadings and documents support such claims. Plaintiff primarily relies upon a document entitled "To whom it may concern" which was signed by defendant Stutzman on October 28, 1988, and which was drafted as an apology to plaintiff. Plaintiff apparently

Accordingly, we enter the following:

## ORDER

And now, April 9, 1998, after reviewing the briefs submitted by the parties and after hearing oral argument, it is hereby ordered that defendants' motion for summary judgment is granted. Plaintiff's amended complaint is dismissed with prejudice.

---

argues that the statements made in the August 18, 1991 church service were made with a "reckless disregard" as to their falsity and placed plaintiff in a false light that would be "highly offensive" to a reasonable person. See *Curran v. Children's Service Center*, 396 Pa. Super. 29, 38-39, 578 A.2d 8, 12-13 (1990). In addition, plaintiff relies upon the "To whom it may concern" document to support her claim that what was meant at the church service was that church members should have shunned her from the outset and should not have welcomed her into their homes. The court finds both of these claims to be without merit.