GLD-111                                        NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3717
_____

MEL M. MARIN,
Appellant

v.

THE ERIE TIMES; JOHN MEAD FLANAGIN;
ROSEANNE CHEESEMAN, Jointly and Severally
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 1-11-cv-00102)
District Judge:  Honorable David S. Cercone
_____

Submitted for Possible Summary Action
Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
January 31, 2013

Before:  FUENTES, FISHER and ROTH, Circuit Judges

(Opinion filed May 15, 2013)
_____

OPINION
_____

PER CURIAM

        Mel Marin appeals pro se from a District Court order dismissing his complaint.

We will affirm.

I.

In 2010, appellant Marin decided to run for Congress, challenging incumbent

Congresswomen Kathy Dahlkemper for the Democratic Party nomination in

Pennsylvania's third congressional district.  On May 9 of that year, the Erie Times-News

ran an article about the primary battles surrounding the seat.  The 1400-word piece was,

by and large, about the "crowded six-person Republican field," but began by describing

the upcoming Democratic primary:

> Kathy Dahlkemper emerged from a crowded primary field two years ago to
> claim the Democratic Party nomination for the 3rd Congressional District
> post.  She went on to defeat seven-term incumbent Republican Phil English
> in November 2008.
>
> This time around, the race has turned upside down.
>
> Dahlkemper is the incumbent, seeking a second two-year term in the U.S.
> House of Representatives in the May 18 primary.
>
> Dahlkemper, of Erie, faces a primary challenge from little-known Mel
> Marin, 56, a former Mercer County resident and a U.S. Army veteran who
> *has consistently declined to answer requests from the press*.  Marin filed an
> unsuccessful court challenge of Dahlkemper's nominating petitions earlier
> this year.

Kevin Flowers, Dahlkemper Faces Challenges: 6 Republicans, 1 Democrat Run for Her

3rd District Seat, Eric Times-News, May 9, 2010, at B1 (emphasis added).  In the

eventual contest, Dahlkemper would go on to "easily defeat[]" Marin, receiving about

three times as many votes.  See Kevin Flowers, Dahlkemper, Kelly to Face Off in

Election, Erie Times-News, May 19, 2010.

A little less than a year later, Marin filed suit in federal court, asserting four claims

against the Erie Times-News, John Mead Flanagin, and Roseanne Cheeseman (the latter

2

two defendants were alleged to be "alter egos" of the paper).[1]  Count 1 of the complaint alleged defamation based on the "consistently declined" language quoted above, count 2 alleged intentional interference with prospective economic relations, count 3 alleged "conspiracy to violate" the First Amendment for "refusing to campaign as the paper requires," and count 4 alleged an additional First Amendment conspiracy based on the "abuse of the [First] Amendment by the press."  The gravamen of the action was that the May 9 article was part of a "plan to place [Marin] in a false light, by implying to the public that [he] . . . is an irresponsible person who ignores this district and ignores all newspapers everywhere" and thus "should not be taken seriously as a candidate." Compl. ¶ 5, ECF No. 1-1.  The complaint alleged two different kinds of injury.  First, it "directly" connected the defamatory statement to Marin's loss in the Democratic primary. See Compl. ¶ 12.  Second, it postulated that the Times-News acted deliberately as part of its "policy of destroying the careers and lives of any candidate" who failed to live at the paper's beck and call by placing "thousands of dollars of political ads" in the paper. Marin sought both monetary and injunctive relief; his damages calculations were based, in part, on the loss of his "congressional salary over 20 years." Compl. ¶ 37.

The defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), arguing inter alia that the complaint "fail[ed] to state a claim for which relief may be granted for defamation because the publication is not capable of a defamatory meaning."  The District Court granted the motion, holding that the "statement upon which plaintiff's

---

[1] In 2010, Marin filed suit in the Erie County Court of Common Pleas, but withdrew his action voluntarily.

3

complaint is grounded is not capable of being defamatory," an issue of law that precluded relief for Marin. "[G]iven the frequency with which candidates can communicate with the public, it is irrational to infer that the average person would conclude plaintiff was an irresponsible and/or not a serious candidate simply because a single sentence in one newspaper article reported that he consistently declined to answer requests from the press without any indications as to the circumstances supplying the basis for the statement." Because "[a]n innocuous sentence in a single news article is not enough to implant a negative impression of plaintiff in the mind of the average person," it was not "capable of lowering the community's estimate of his personal or business reputation or exposing him to public hatred, contempt or ridicule." Determining that Marin's remaining claims were premised on the validity of the defamation claim, the Court dismissed them too. Marin timely sought review.

## II.

We have jurisdiction under 28 U.S.C. § 1291, and exercise "plenary review over the District Court order granting the Rule 12(b)(6) motion." Capogrosso v. Sup. Ct. of N.J., 588 F.3d 180, 184 (3d Cir. 2009) (per curiam). Because Marin has proceeded pro se throughout, his filings will be liberally construed, but he is still required to allege sufficient facts in his complaint to support a valid claim. See Mala v. Crown Bar Marina, Inc., 704 F.3d 239, 244-45 (3d Cir. 2013). To do so, Marin must plead enough facts, accepted as true, to plausibly suggest entitlement to relief. Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 675, 679 (2009)).

4

"Although replete with First Amendment implications, a defamation suit fundamentally is a state cause of action." Jenkins v. KYW, 829 F.2d 403, 405 (3d Cir. 1987) (citations omitted). In resolving claims based on Pennsylvania law, "we must do what we predict the Pennsylvania Supreme Court would do." Wassall v. DeCaro, 91 F.3d 443, 445 (3d Cir. 1996). In the process, we must be mindful that "publications concerning candidates must be accorded at least as much protection under the First and Fourteenth Amendments as those concerning occupants of public office." Monitor Patriot Co. v. Roy, 401 U.S. 265, 271 (1971).

III.

A) Claim 1: Defamation

"In Pennsylvania, the Uniform Single Publication Act, 42 [Pa. Cons. Stat.] §§ 8341–8345, sets forth the elements of a prima facie case in a defamation action." Weaver v. Lancaster Newspapers, Inc., 926 A.2d 899, 903 (Pa. 2007). The first element, and the one at play here, is the "defamatory character of the communication." 42 Pa. Cons. Stat. § 8343(a)(1). "[A] statement is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Marcone v. Penthouse Int'l Magazine for Men, 754 F.2d 1072, 1078 (3d Cir. 1985) (quotation marks, citations omitted). "The test is the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate. The words must be given by judges and juries the same signification that other people are

5

likely to attribute to them." Boyer v. Pitt Publ'g Co., 188 A. 203, 204 (Pa. 1936); accord

Tucker v. Fischbein, 237 F.3d 275, 282 (3d Cir. 2001). Although specific language in an

article "may be defamatory even though the subject of the defamatory language is not the

focus of the article," MacElree v. Phila. Newspapers, 674 A.2d 1050, 1054 (Pa. 1996),

the context of the language may render a defamatory interpretation unreasonable, Thomas

Merton Ctr. v. Rockwell Int'l Corp., 442 A.2d 213, 216 (Pa. 1981).

Whether a publication is "capable of defamatory meaning" is a legal question to

be resolved by the court.[2] See Rockwell, 442 A.2d at 215; see also Church of

Scientology Int'l v. Behar, 238 F.3d 168, 173 (2d Cir. 2001) (observing that defamatory

character "should ordinarily be resolved at the pleading stage"). If the answer is "no,"

the case should be dismissed. Tucker, 237 F.3d at 282; MacElree, 674 A.2d at 1053.

We agree with the District Court that the language in question, "read as a whole,

in context," Marcone, 754 F.3d at 1078, was not capable of being defamatory in the way

Marin suggests. An isolated remark about a candidate's isolation from the press corps, in

an article that overwhelmingly directs its focus elsewhere, may be "embarrassing or

annoying" to the candidate, but it would not "naturally engender" a defamatory effect in

---

[2] Marin maintains that we must accept as true his contention that the language in controversy is capable of defamatory meaning because he has pleaded the question with particularity. Because this is a legal conclusion and not a factual one, however, it cannot be accepted as true simply because it is pleaded in the complaint. Cf. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Nor do we agree that the test is whether "*no one* could possibly find the innuendo damaging." The case he cites for that proposition says nothing of the sort; rather, it evaluates the "effect the allegedly false and defamatory communication is fairly calculated to produce and the impression it would naturally engender in the minds of those among whom it was intended to circulate." Petula v. Mellody, 588 A.2d 103, 108 (Pa. Commw. Ct. 1991) (citation omitted).

the minds of the average reader of the newspaper.  Id. at 282.  Given the article as a whole, which discusses each candidate and what his or her plans for office would be, the language would almost certainly be understood to explain the absence of a profile on Marin.  Marin rightly suggests that innuendo can transform the otherwise-innocuous into defamation by implication, see Rockwell, 442 A.2d at 216, but the meaning he suggests here—that he is unreliable, "irresponsible[,] and not to be taken seriously"—stretches the statement too thin.  We do not suggest that no person could form that opinion, or that Marin is unjustified in so doing, but as a matter of law, the statement as presented is incapable of being defamatory.

B) Claim 2, 3, and 4: Intentional Interference With Prospective Economic Relations and "First Amendment" Claims

We agree with the District Court that these claims are all premised on the underlying existence of a defamation claim.  Even when read with the requisite degree of liberal construction, Marin's "First Amendment" claims are simply garden-variety defamation, contract, conspiracy, and tortious interference claims, which fail for the reasons set forth above or are otherwise inadequately pleaded under Fed. R. Civ. P. 8(a).  See also Glenn v. Point Park College, 272 A.2d 895, 898–99  (Pa. 1971).  They afford no independent basis for relief.  Furthermore, Marin's theory of state action, which he employs in his attempt to lodge a constitutional cause of action against the Times-News

(a private party), has no grounding in law.[3]

### IV.

For the foregoing reasons, we agree with the District Court that dismissal was proper, and having reviewed Marin's submissions both below and on appeal, we conclude that amendment would be inequitable or futile. See Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 217 (3d Cir. 2013). Thus, finding no substantial question to be presented, we will summarily affirm. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam). Marin's motion to strike Third Circuit I.O.P. 10.6 is denied.[4]

---

[3] The Times-News might be surprised to learn, as Marin insists, that it has the power to "make[] or break[] candidates," that it "control[s] every race," and that it "undermine[s] the voting process in Erie County," to such degree that it is "effectively . . . a state actor" under Smith v. Allwright, 321 U.S. 649 (1944). After defeating Marin, Congresswoman Dalhkemper was endorsed by the Times-News. See Editorial, Erie Times-News Lists Endorsements in Key Races, Erie Times-News, Nov. 1, 2010. But she, in the end, would be "knocked off" by "Mike Kelly, the Republican car dealer and former Notre Dame University football player," in the 2010 Republican landslide. Kevin Flowers, Kelly Coasts, Erie Times-News, Nov. 3, 2010.

[4] Marin argues that I.O.P. 10.6 is "void for vagueness," but does not explain how our procedure runs afoul of that doctrine. Contrary to his assertions, we employ the same standard of review—plenary analysis—of orders granting and denying motions to dismiss whether evaluating them before or after briefing. Thus, even if we have authority to "strike" our summary action procedure, the motion lacks merit.