J-A21023-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PAUL R. GRAHAM, JR., | |
| Appellant | No. 1194 WDA 2016 |

Appeal from the PCRA Order July 21, 2016
In the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0001468-2012

BEFORE:  BENDER, P.J.E., OLSON, J., and STABILE, J.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 12, 2017**

Appellant, Paul R. Graham, Jr., appeals *pro se* from the order entered on July 21, 2016, dismissing Appellant's petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

In a prior memorandum, this Court summarized the underlying facts of this case, as well as some of the procedural posture.  We explained:

> Appellant was charged with, *inter alia*, rape, four counts of involuntary deviate sexual intercourse, two counts of aggravated indecent assault, three counts of statutory sexual assault, three counts of indecent assault, and two counts of corruption of the morals of minors.  The charges arose from allegations he molested his then nine-year-old niece ("the victim") between 2003 and 2005.
>
> The trial court summarized the trial evidence as follows:
>
>> A two-day jury trial began on September 16, 2013. . . . At trial, the Commonwealth offered the testimony of the victim, her mother, and the arresting officer.

At the time of trial, the victim was [19] years old. [Appellant] married the victim's aunt when the victim was approximately nine years old. The victim's and Appellant's families were close, and [Appellant] acted as the victim's babysitter while her parents worked. [Appellant] babysat the victim and her brother "pretty much every day." Sometimes she would stay the night at [Appellant's] residence and he would assist her with getting ready for school the next morning. The victim enjoyed spending time with her uncle, because he would play games with her and "pretty much did whatever [the victim] wanted to do all the time."

However, in February [] 2003, when the victim was nine years old, [Appellant] began to sexually abuse the child. While wrestling, the victim stuck her tongue out at [Appellant], and he warned her not to do it again. When she did, [Appellant] licked the inside of the victim's mouth and her tongue. In another episode, [Appellant] stuck his fingers in the victim's mouth and made her suck on them. He also made the victim lift up her shirt while he touched and licked her nipples. Similar events happened multiple times.

[Appellant's] family eventually moved into the victim's prior home, while the victim and her family resided three blocks away. The victim was close to ten years old at the time. The two residences were in walking distance to each other, and [Appellant] continued to babysit the victim.

The two often spent time in [Appellant's] bedroom. The victim testified that Appellant once removed two vibrators from a dresser drawer. He placed them on the victim's legs and explained that it was supposed to make her feel good. He then removed the victim's pants and rubbed the objects between her vagina and pushed them on her clitoris. When asked if the objects penetrated her vagina, the victim responded, "they went in between the lips."

[Appellant] would regularly remove the victim's pants. In one episode he made the victim sit on top of his face and then placed his tongue in her vagina. Once,

- 2 -

[Appellant] made the victim bend over on all fours while he removed her pants. He then placed his finger into the victim's anus. The act was extremely painful for the victim, who pulled away and ran to the bathroom. The victim was frightened when the event caused a "mucousy" discharge. [Appellant] laughed and told the victim that it would be "okay."

[Appellant] also forced the victim to perform oral sex on him. The victim recalled gagging and pulling away. These sexual assaults occurred almost every time the victim was at [Appellant's] residence. On another occasion, [Appellant] made the victim [lie] down on the bed, while he put his penis in between her thighs and then ejaculated. [Appellant's] semen contacted the victim's pants and thighs. Once, while sitting by the pool, [Appellant] placed his fingers in the victim's vagina. The victim recalled occasions where [she] and Appellant would be sitting on the couch while he would touch her vagina above her clothes or pinch her nipples.

The victim also testified that on one occasion [Appellant] removed the victim's pants, forced her to lie on the bed, and placed his penis between the lips of her vagina. [Appellant] ejaculated on the victim's legs and vagina. [Appellant] once inserted his penis into the victim's anus. The victim was subjected to extreme pain and stated that it "felt like I had been ripped." She ran to the bathroom and observed spots of blood on the toilet paper used to wipe the area.

Because of the continuous systemic abuse, the victim testified that the acts were "kind of like a normal thing, like I was kind of used to it by then. [Appellant] always told me if I would ever tell anybody, he would go to jail for a long time. He was like my best friend, so I didn't really want him to leave."

The victim also explained that [Appellant] would tell her stories of his previous sexual encounters. She recalled that he once took her to a video rental business and rented a pornographic video tape. The victim waited in the vehicle, while [Appellant] "ran" into the store, acquired the tape, and then ran back to the vehicle. At

- 3 -

his residence, he and the victim watched the video. He provided wine to the victim and encouraged her to drink it, which she did on one occasion. He also provided cigarettes to the victim and encouraged her to smoke them.

After a family dispute in 2005, [Appellant] and his family moved out of the residence when the victim was around [12] years old. Because the two families no longer interacted, the abuse ceased. The victim did not come forward at that time, because she did not want to cause more problems or fighting.

However, the victim ultimately came forward with her abuse in the summer of 2012. She had spoken with a close friend who encouraged her to disclose the abuse. The victim was concerned, because her cousin had two young children, which she believed resided in the same home as [Appellant]. With the encouragement from her friends, the victim told her mother. She later went to the Charleroi Police Department to report her abuse.

The victim's mother corroborated that between the years of 2003 and 2005 [she] and her husband had busy employment schedules and relied on [Appellant] and his wife to babysit their children. The victim had explained to her mother that she had been sexually assaulted for a period of time between the ages of nine and [12] years old. During that time, the victim's temper tantrums prompted mother and child to visit a medical doctor. Near the end of the two families' relationship, the victim told her mother that she no longer wanted to go to [Appellant's] home, but she did not expand on her reasons.

The final witness was Detective Lieutenant Eric Porter. [Lieutenant] Porter had been a member of the Charleroi Police Department for over [15] years. The victim was interviewed by [Lieutenant] Porter and a criminal complaint was prepared. Due to the length of time between the abuse and its reporting, there was no attempt to collect any physical evidence by means of a rape kit or other physical medical examination. He

testified that it was common for minor children to not come forward for a long period of time.

[Trial Court Opinion, 6/6/14, at 2-5].

Appellant did not testify or present any exhibits or witnesses on his behalf. On September 17, 2013, the jury found Appellant guilty on all counts.

***Commonwealth v. Graham***, 122 A.3d 1134 (Pa. Super. 2015) (unpublished memorandum) at 1-5 (internal footnotes omitted) (some internal quotations, citations, and corrections omitted).

The trial court sentenced Appellant in December 2013. However, on June 16, 2015, this Court vacated Appellant's judgment of sentence and remanded for resentencing. ***Id.*** at 16.

The trial court resentenced Appellant on July 28, 2015; it ordered that Appellant serve an aggregate term of 46 to 92 years in prison for his convictions and register, for 15 years, in accordance with the Sexual Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799.10-9799.41.

Appellant did not file a direct appeal from his judgment of sentence. Instead, Appellant filed the current PCRA petition on September 24, 2015. Appellant raised numerous claims in his *pro se* PCRA petition, including: trial counsel was ineffective for failing to object to prosecutorial misconduct during the Commonwealth's opening statement, where the Commonwealth made "improper remarks regarding the credibility of the complaining witness" and declared that Appellant "was a laborer" and had been "laid off

quite a bit;" trial counsel was ineffective for failing to object to prosecutorial misconduct during the Commonwealth's closing argument, where the Commonwealth made remarks that were not supported by the evidence; trial counsel was ineffective for failing to investigate and prepare a defense; trial counsel was ineffective for failing to impeach the credibility of the complaining witness; and, prior counsel were ineffective for failing to challenge the sufficiency of Appellant's rape conviction. Appellant's *Pro Se* PCRA Petition, 9/24/15, at 1-18.

The PCRA court appointed counsel to represent Appellant during the post-conviction proceedings. **See** Trial Court Order, 10/21/15, at 1. However, on January 21, 2016, appointed counsel filed a no-merit letter and a request to withdraw as counsel, pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

After reviewing counsel's **Turner**/**Finley** letter, and an objection filed by Appellant, the PCRA court entered an order that granted counsel's petition to withdraw and notified Appellant that it intended to dismiss the PCRA petition in 20 days, without holding a hearing. **See** PCRA Court Order, 6/1/16, at 1; Pa.R.Crim.P. 907(1). The PCRA court finally dismissed Appellant's PCRA petition on July 21, 2016. PCRA Court Order, 7/21/16, at 1-2.

Appellant filed a timely notice of appeal and now raises two claims to this Court:

- 6 -

[1.] Failure of trial counsel [to] investigate and prepare a defense.

[2.] Failure of trial counsel to object to the prosecutor's argument, remarks and alleged expert opinion during her opening statement and closing argument.

Appellant's Brief at 4 (some internal capitalization omitted).

We have reviewed Appellant's brief,[1] the relevant law, the certified record, the notes of testimony, and the opinion of the able PCRA court judge, President Judge Katherine B. Emery. We conclude that President Judge Emery's opinion, entered on December 27, 2016, meticulously and accurately disposes of Appellant's meritless claims on appeal. Therefore, we affirm on the basis of President Judge Emery's thorough opinion and adopt it as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of President Judge Emery's opinion with the name of the victim redacted.[2]

_____

[1] The Commonwealth did not file a brief in this case.

[2] On August 14, 2017, Appellant filed, in this Court, a "Motion for Relief Pursuant to Pa.R.A.P. 123 Request to Expand the Record Due to Newly Announced Rule of Law" (hereinafter "Appellant's Motion for Relief"). Within Appellant's Motion for Relief, Appellant cited the Pennsylvania Supreme Court's recent opinion in **Commonwealth v. Muniz**, ___ A.3d ___, 2017 WL 3173066 (Pa. 2017), where the Supreme Court held that the registration requirements of SORNA constitute punishment for purposes of the federal and state constitutions. In accordance with **Muniz**, Appellant requested that this Court "vacate all portions of the sentence issued in this matter pertaining to SORNA registration and notification." Appellant's Motion for Relief, 8/14/17, at 1 (some internal capitalization omitted).

*(Footnote Continued Next Page)*

Appellant's "Motion for Relief Pursuant to Pa.R.A.P. 123 Request to Expand the Record Due to Newly Announced Rule of Law" denied. Order affirmed. Jurisdiction relinquished.

*(Footnote Continued)* ────────

Since ***Muniz*** was not filed until July 19, 2017, Appellant (obviously) did not include the claim in his PCRA petition. Therefore, Appellant is not entitled to relief on his claim. ***See*** 42 Pa.C.S.A. § 9543(a) ("[t]o be eligible for relief under th[e PCRA], the petitioner **must plead** and prove by a preponderance of the evidence all of the following. . .") (emphasis added); Pa.R.A.P 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"). Further, to the extent Appellant views his current motion as a subsequent PCRA petition, we note:

> when an appellant's PCRA appeal is pending before a court, a subsequent PCRA petition cannot be filed until the resolution of review of the pending PCRA petition by the highest state court in which review is sought, or upon the expiration of the time for seeking such review. If the subsequent petition is not filed within one year of the date when the judgment became final, then the petitioner must plead and prove that one of the three exceptions to the time bar under 42 Pa.C.S. § 9545(b)(1) applies. The subsequent petition must also be filed within sixty days of the date of the order which finally resolves the previous PCRA petition, because this is the first "date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

***Commonwealth v. Lark***, 746 A.2d 585, 588 (Pa. 2000) (internal footnote omitted).

J-A21023-17

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/12/2017

To: District Attorney; Paul Graham by Certified Mail; File

## IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA, )
            )
  vs.          )  No. 1468 of 2012
            )
PAUL R. GRAHAM, JR.,     )
            )
   Defendant.     )

### OPINION PURSUANT TO Pa. R.A.P. 1925(a)

Paul Graham appeals this Court's July 21, 2016 order denying relief under the Post-Conviction Relief Act (PCRA). This opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

### BACKGROUND

The relevant procedural and factual background can be summarized as follows: On June 12, 2012 a criminal complaint was filed charging Graham with various offenses related to alleged sexual abuse of his niece, _____ for a period between January 1, 2003 and June 30, 2005. (Record No. 6) At trial, the prosecution proceeded on rape[1], four counts of involuntary deviate sexual intercourse[2], two counts of aggravated indecent[3], three counts of statutory sexual assault[4], three counts of indecent assault[5], and two counts of corruption of the morals of minors.[6] (Record No. 15) Attorney Sally Frick (Frick) entered her appearance on behalf of Graham on January 17, 2013 and represented Graham at his jury trial. (Record No. 20)

---

[1] 18 Pa.C.S. § 3121(a)(6) (subsequently amended and renumbered 18 Pa.C.S. § 3121(c), effective Feb. 7, 2003).
[2] 18 Pa.C.S. § 3123(a)(6) (subsequently amended and renumbered 18 Pa.C.S. § 3121(c), effective Feb. 7, 2003).
[3] 18 Pa.C.S. § 3125(a)(7).
[4] 18 Pa.C.S. § 3122.1.
[5] 18 Pa.C.S. § 3126(a)(7).
[6] 18 Pa.C.S. § 6301(a)(1).

1



Graham was found guilty on all counts on September 17, 2013 following a two-day jury trial and was sentenced on December 16, 2013. (Record No. 36).

The Washington County Public Defender's was appointed to represent Graham for post-sentence motions and any appeal. (Record No. 37). The post-sentence motions were denied, but a motion to reconsider sentence was granted and the Court resentenced Graham on March 13, 2014. (Record No. 49). Graham appealed his conviction for sufficiency and weight of the evidence and error in sentencing on April 3, 2014. On June 16, 2015, the Pennsylvania Superior Court affirmed Graham's conviction but remanded for a resentencing finding that the Court's sentence exceeded the sentences authorized by the statute in effect when Graham committed the crimes. (Record No. 61). After remand, Graham was resentenced again on July 28, 2015. (Record No. 62). Graham filed a PCRA on September 24, 2015 and this Court appointed Attorney John Egers ("Attorney Egers") to review the PCRA and either file an Amended PCRA or a "no merit" letter within 60 days of the October 21, 2015 appointment Order. (Record Nos. 63 & 64). Attorney Egers was granted an extension of time until January 21, 2016 when he filed a "no merit" letter finding each of Graham's PCRA claims meritless and motioned for withdrawal as counsel. (Record No. 65).

Graham filed an objection to Attorney Egers' "no merit" letter on February 11, 2016 and a Motion to Amend PCRA Petition on April 11, 2016. (Record No. 67 & 68). This Court filed a Notice of Intent to Dismiss PCRA Petition and granted Attorney Egers' Motion to Withdrawal on May 31, 2016. (Record No. 69). Graham filed a Response to PCRA Counsel's Motion to Withdraw on June 20, 2016. (Record No. 70). This Court reviewed Graham's Response and all other relevant portions of the record before denying the PCRA Petition on July 21, 2016. Graham appealed the denial of his PCRA on August 22, 2016. (Record Nos. 71 & 72).

2

## ISSUES ON APPEAL

Graham was not instructed to file a Concise Statement of Matters Complained of on Appeal but described the issues to be raised on appeal in his docketing statement as "Petitoned [sic] Appellant was denied due process of law guaranteed by the 5th, 6th, and 14th Amendments of the United States Constitution." Graham's PCRA reveals that these alleged constitutional violations all stem from ineffective assistance of counsel as defined by 42 Pa.C.S. § 9543(a)(2)(ii). Graham's claims in the PCRA can be summarized and categorized as follows:

1) Failure of Trial Counsel to object to the prosecutor's argument, remarks, and alleged expert opinion during her opening statement and closing argument;

2) Failure of Trial Counsel to Investigate and Prepare a Defense;

3) Failure of Trial Counsel to Impeach _____ with Prior Inconsistent Statements;

4) Failure of Trial and Appellate Counsel to raise an insufficiency of the evidence argument; and

5) Failure of Appellate Counsel to challenge the introduction of the lone trial exhibit over the objection of Trial Counsel.

Graham filed an Amended PCRA which raised the above issues but also claimed ineffective assistance of counsel on the part of his appointed PCRA counsel for "taking the easy way out" and filing a "no merit" letter.[7] Graham fleshed out the claims of ineffective assistance of PCRA counsel in his Response to PCRA Counsel's Motion to Withdrawal as Counsel with Consolidated Memorandum of Law. Graham should have captioned this document "Response to Notice of Intention to Dismiss PCRA Petition" as his PCRA counsel's Motion to Withdrawal had already been granted. Regardless, this filing should be viewed as an "objection to dismissal" raising claims of ineffective PCRA counsel as discussed in *Commonwealth v. Rykard*, 55 A.3d 1177, 1184 (Pa. Super. 2012). This Court's July 21, 2016 Order denying Graham's PCRA did

---

[7] Graham did not add any new categories of allegations against counsel for ineffective assistance but did provide more examples of prior inconsistent statements in his "objection to dismissal."

3

not address the merits concerning ineffective assistance of PCRA Counsel and did not specifically address all of the claims in the underlying PCRA, which this Court will now do below.

## I. Ineffective Assistance of Trial and Appellate Counsel

The standard applicable to ineffective assistance of counsel claims is well established in Pennsylvania jurisprudence: to succeed on such a claim, Graham must plead and prove by a preponderance of the evidence that (1) the underlying claim has arguable merit, (2) counsel did not have a reasonable basis for his action or inaction, and (3) he suffered prejudice, or in other words – a reasonable probability that the outcome of the proceedings would have been different, as a result of this action or inaction. *Com. v. Steele*, 961 A.2d 786, 797 (Pa. 2008). Counsel is presumed to be effective and Graham bears the burden of proving otherwise. *Com. v. Harris*, 972 A.2d 1196, 1203 (Pa. Super. 2009). Where it is clear that he has failed to meet any one of the three prongs, his claim may be disposed of on that basis alone – without determination of whether the other two prongs have been met. *Steele*, at 797.

1. *Trial Counsel failed to object to prosecutor's argument, remarks, and alleged expert opinion during her opening statement and closing argument.*

Graham argues Frick was ineffective based upon her failure to object to several different statements made by the Assistant District Attorney Kristen Klingerman (Klingerman) during her remarks to the jury in opening statements and closing arguments. These statements would need to amount to prosecutorial misconduct to meet the arguable merit prong under *Steele*. Prosecutorial misconduct occurs when the unavoidable effect of the comments by a prosecutor to the jury was to prejudice the jury, forming in their minds fixed bias and hostility towards the accused so as to hinder an objective weighing of the evidence. *Com. v. Chester*, 587 A.2d 1367, 1377 (Pa. 1991).

4

Graham first takes issue with Klingerman statements to the jury that they "will believe this victim" and that "_____ is to be believed." N.T. p. 21. Statements made by a prosecutor must be placed in context with the rest of an opening statement or closing argument. *Com. v. Correa*, 664 A.2d 607 (Pa. Super. 1995). Klingerman later said in the same opening:

> You will be given tools to evaluate the credibility of witnesses. The Judge just mentioned a few. You will use your common sense. You can watch _____ You can watch her demeanor, watch her behavior, evaluate what she says.

(N.T. p. 28.) Klingerman made similar remarks in her closing argument:

> The testimony of _____ was believable and it was believable because it was true. It was upsetting, its horrifying, its appalling, but it is all true. And you know that it's true. You know it's true because it has been consistent.

(N.T. p. 148.)

Klingerman did not simply tell the jury they must blindly believe the victim as Graham frames the comments in his PCRA. The jury was told they would have certain tools to judge the credibility of _____ and that _____ had believable testimony because it was consistent. In context, the comments made by Klingerman do not arise to prosecutorial misconduct and Frick thus had a reasonable basis for not objecting.

Klingerman stated in her opening that Graham was "a laborer" who was "laid off quite a bit." (N.T. p. 23.) The prosecution presented no evidence on this topic. Graham argues that Frick was ineffective because she should have objected to the prosecution raising the allegation of Graham being laid off but not presenting evidence to support the allegation. This is not a meritorious ineffective assistance of counsel claim. Klingerman's failure to bring in evidence to support a claim she made in her opening actually helps Graham because it can affect

Klingerman's credibility with the jury. Furthermore, this issue of whether or not Graham was laid off frequently is of little consequence to the key allegations in the case.

Graham alleges Frick was ineffective for failing to object to Klingerman's remarks that the alleged criminal acts happened "almost every single day" and later that "it happened every single day" because the evidence did not support the frequency of sexual events. (N.T. p. 151.) The jury charge made by this Court instructed the jury to judge the case on the facts presented. (N.T. p. 168.) _____ was unable to recall the exact dates the crimes occurred on but said something of a sexual nature happened "almost every time" when questioned by Frick about the frequency of such acts. (N.T. pp. 90-91.) Thus, testimony was presented at trial to support Klingerman's remarks and Frick was not ineffective for failing to object.

Klingerman made remarks in her closing argument regarding children's ability to recall memorable events and that victims of abuse do not report the abuse immediately such as the victims of the Roman Catholic Church and Jerry Sandusky scandals. (N.T. pp. 150, 157-158.) Graham alleges these comments amounted to expert testimony and Frick was ineffective for failing to object. Looking at the comments in context, Klingerman made these remarks in response to Frick's argument that _____ was less credible because there was a delay in reporting the crimes. (N.T. pp. 137-138, 142-143, 158). The comments were not framed to the jury as expert testimony but instead as an appeal to the jury's common sense and personal experience which a prosecutor is permitted to do.

2. *Trial Counsel failed to investigate and prepare a defense.*

Graham first argues that Frick was ineffective for failure to introduce his union records of hours worked in response to Klingerman's comments that Graham was "laid off quite a bit." These remarks by Klingerman were made during her opening statement which is not evidence to

6

the jury and Klingerman never produced concerning Graham's work hours. Therefore, these comments could not have prejudiced Graham.

Graham alleges that Frick was ineffective for failure to introduce his "sexual offenders address worksheet" and _____'s grandfather's obituary to impeach _____ on the beginning date of the sexual abuse and at which locations it occurred. The "sexual offenders address worksheet" confirms that Graham is a registered sex offender already with the Commonwealth of Pennsylvania and Frick certainly has a reasonable basis to not introduce it as the document confirms the defendant has a past conviction for a sexual crime requiring registration. Evidence of that nature would be destructive to Graham's defense in a sexual abuse case.

_____ testified at the trial that the abuse started in 2003 when her grandfather was still alive. (N.T. p. 44). Her grandfather died in 2002 and Graham alleges Frick was ineffective for not introducing the obituary to highlight this inconsistency. While an inconsistency does appear to exist, this Court finds it to be of little weight in disproving the criminal acts at issue and thus sees no prejudice to Graham.

In Graham's "objection to dismissal," he also alleged counsel was ineffective for failing to ask Graham's co-workers about his work schedule and investigate his wife's work schedule. Graham does not explain how these facts would have helped his defense and this Court does not find counsel to be ineffective for not investigating these issues further.

Graham finds fault with his counsel for failing to "call an expert medical witness and forensic psychologist." As the commonwealth presented no medical or expert testimony, witnesses of this nature would have been of little value to Graham's defense. Graham does not allege any medical or expert theories of defense that his counsel failed to present thus this claim is meritless.

7

Graham alleges there was a confrontation between himself and the victim in April 2012 in Dee's video store and the criminal complaint was filed two weeks later. Graham alleges this shows evidence of a prejudicial and hostile motive to fabricate the allegation. Graham provides no other information concerning the alleged confrontation and does not argue that he asked trial counsel to investigate the events and was refused. Even if true, a confrontation in a store does not provide strong evidence of motive for a victim to fabricate two years of constant forced sexual abuse.

3. *Trial Counsel failed to impeach ⟨_____ with prior inconsistent statements.*

Graham alleges a number of inconsistences exist in testimony between the incident investigation report, preliminary hearing, and trial. The inconsistences center on the following areas of testimony:

        a) Whether S_____ went with Graham to wash semen off of clothing;
        b) Whether oral sex was reciprocated;
        c) Details concerning oral sex and "face sitting";
        d) The pornography Graham showed her;
        e) The use and description of two different vibrators;
        f) The severity of anal bleeding following forced anal penetration;
        g) Graham's use of his tongue and finger sucking;
        h) When the molestation began in regards to _____'s age and grandfather dying;
        i) Graham's work schedule and living address;
        j) Existence of a "dice game;" and
        k) Details about a family gathering.

Alleged inconsistencies (a-g) all involve explicit sexual acts between Graham and _____ Frick's decision to not question _____ about these items was certainly reasonable. Extended questioning would draw more attention to the acts allegedly committed, reinforcing them in the juror's minds. Items (h) and (i) were discussed above and are meritless claims. Graham argues there is an inconsistency with the "dice game" because it was never mentioned at the preliminary hearing but was brought up during trial. This is not a clear inconsistency and is of little weight to

8

the material issue of the acts alleged by _____ 's alleged inconsistency regarding the family gather is also minor and only concerns who was present. Graham is thus unable to meet the high bar required to show ineffective assistance of counsel absent clear inconsistencies to the material issues of the case.

4. *Trial and Appellate Counsel failed to raise an insufficiency of the evidence argument.*

Graham alleges that Frick was ineffective for her failure to argue the insufficiency of the evidence against Graham for the Commonwealth's inability to produce evidence of sexual intercourse between the dates of 1/1/2003 and 6/1/2005 to prove the charge of rape. Graham supports this contention with cites to *Com. v. Devlin*, 333 A.2d 888 (Pa. 1975) and *Com. v. Jette*, 818 A.2d 533 (Pa. Super. 2003) as cases showing that due process requires the commonwealth provide a specific date. *Devlin* concerned a rape case where the victim claimed a single instance of forced sexual intercourse. The *Devlin* Court found that the defendant was precluded from preparing a defense to the charges against him because the Commonwealth's proof at trial provided only that the crime occurred at some unspecified time during a fourteen month period. However, the Court said due process does not require a fixed date but the date should be "fixed with reasonable certainty" and "be subject to variations based upon the crimes charged and the victim's age and condition, balanced against the rights of the accused." *Devlin*, at 892.

Graham argues that because a specific date as to when _____ was forced to submit to sexual intercourse was not provided between the dates of 1/1/2003 to 6/1/2005 then the jury must conclude that _____ was raped every single day between those two dates – otherwise there was insufficient evidence presented to sustain the verdict. This is incorrect. The testimony of the victim alone, absent medical evidence, is sufficient to convict if the fact finder believes the victim. *Com. v. Jette*, 818 A.2d 533, 534 (Pa. Super. 2003). Furthermore, the Superior Court

9

found that a range of dates provides sufficient due process in matters of continuous abuse of children. *Com. v. Brooks*, 7 A.3d 852 (Pa. Super. 2010).

On one occasion, Graham went to rent a pornographic movie to watch with _____ from a store called Dee's. _____ testified at trial that she did not go into Dee's with Graham to rent the movie but was able to recall details about the layout of the store. (N.T. p. 58-60). Graham argues that Frick was ineffective for not raising an insufficiency of the evidence claim concerning this inconsistency. However, _____ did not testify that she *never went into Dee's, just that she did not accompany Graham into that store that day.* _____ could have been inside of Dee's any number of times with other family members on other occasions and therefor this is not an inconsistency.

Graham argues that his appellate counsel was also ineffective for failing to bring the insufficiency of evidence as to date of the offenses argument in an appeal to the Supreme Court of Pennsylvania. Ineffective assistance of appellate counsel is judged by the same three prong test as that of trial counsel. *Com. v. Grosella*, 902 A.2d 1290, 1294 (Pa. Super. 2006). Since this Court concluded that this claim was meritless for trial counsel to raise above, it must similarly conclude that it would be a meritless claim for appellate counsel to raise.

5. *Appellate Counsel failed to challenge the introduction of the photograph trial exhibit.*

Klingerman introduced a photograph of _____ when she was nine years old as the Commonwealth's only exhibit. Frick objected to the photo's introduction but this Court overruled the objection. Graham argues that appellate counsel was ineffective for not following through with an appeal on this issue. Appellate counsel would have had to prove that trial court abused its discretion in admitting the photo. *Com. v. Travagila*, 28 A.3d 868 (Pa. 2011). The record reveals no partiality, prejudice, bias, ill-will, or lack of support that would necessitate a finding of an abuse of discretion by the this Court thus rendering the claim meritless.

10

## II.     Ineffective Assistance of PCRA Counsel

Graham avers that Attorney Egers provided ineffective assistance of counsel by (1) "erroneously concluding that it was not necessary to interview Mr. Graham prior to filing his request to withdraw as Counsel of Record" and (2) "erroneously authoring a No Merit Letter that amounted to a usurpation of the prosecutorial function." Graham argues that Attorney Egers committed "critical counsel error" and violated standards set out by the American Bar Association Project on Minimum Standards for Criminal Justice.[8]  This Court notes that its review is guided by Pennsylvania jurisprudence and applicable federal case law, not the ABA standards cited by Graham. The standard for ineffective assistance of PCRA counsel is the same for trial and appellate counsel as described above under *Steele. Rykard*, at 1189.

1. *Mr. Egers committed critical counsel error by erroneously concluding that it was not necessary to interview Mr. Graham prior to filing his request to withdraw as counsel of record.*

To prevail here, Graham must show that Attorney Egers had no reasonable basis for failing to conduct an interview prior to the filing of the "no merit" letter. Attorney Egers spoke to this very issue in his "no merit" letter where he stated "I have not personally interviewed Mr. Graham, but an interview of the client is not necessary in order to understand the merits of claims presented and to seek withdrawl as counsel." Attorney Egers supported the statement with a citation to *Com. v. Torres*, 630 A.2d 1250, 1252 (Pa. Super. 1993).

Graham argues that *Torres* is not applicable to his case because "facts that persuaded the Honorable Court in *Torres* are NOT PRESENT in this matter." Specifically, "*Torres* Counsel

---

[8] Graham points to standard 3.2 on providing appeals and standard 5.3 on defense services which are incorrect designations. This Court believes Graham is pointing to Standard 21-3.2 Counsel On Appeal and Standard 4-5.3 Obligations of Stand-By Counsel. Regardless, the standards cited by Graham must be secondary to established law. For example, while Standard 21-3.2(b) states that "counsel for a defendant-appellant should not seek to withdraw from a case because of counsel's determination that the appeal lacks merit" – this standard is obviously not applicable to appointed PCRA counsel who find the claims of the appeal to be meritless under *Com. v. Finley*, 550 A.2d 213 (Pa. Super. 1988).

11

was familiar with his client's claims since he previously represented him both in filing his P.C.R.A. Petition and during re-sentencing." Graham further posits that the *Torres* Court "set forth counsel's responsibility to **INTERVIEW** a defendant during his representation."

While Graham is correct that the facts of his case are distinct from *Torres*, Graham is incorrect in what the *Torres* opinion stood for. *Torres* specifically examined whether or not an interview of the Defendant was necessary before counsel could withdrawal representation under *Anders v California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). *Torres* held that the key determination PCRA counsel must make is whether the appeal is frivolous which an interview may aid in but "*an interview is unnecessary in most instances, and we find no justification in making one an additional Anders requirement.*" *Torres*, at 287 (Emphasis added). The Court went on to explicitly state "we do not propose any per se requirements of interviewing or communication with appellant by counsel." *Id.*, at 290. Furthermore, "counsel is presumed to act professionally and ethically in this process and will engage in such communication as required by each case." *Id.*

Attorney Egers indicated that he reviewed the entirety of Graham's file with the Washington County Clerk of Court's Office including transcripts of every hearing as well as every opinion issued by this Court and the Superior Court pertaining to Graham. Based on that review, Attorney Egers determined that Graham was ineligible for relief under the PCRA because the claims were without merit. There is nothing in the record, and no arguments put forth by Graham, to overcome the presumption that Attorney Egers' chose not to conduct an interview because it was unnecessary. Thus, Graham fails to meet his burden necessary to prove ineffective assistance of PCRA Counsel.

12

2. *Mr. Egers committed critical counsel error by erroneously authoring a no merit letter that amounted to a usurpation of the prosecutorial function that included a gratuitous explanation of the absence of merit of Mr. Graham's claims.*

Graham argues that Attorney Egers was required to "support Mr. Grahama's [sic] Appeal to the best of his ability" and that Attorney Egers abandoned his role as Graham's advocate by authoring a "no merit" letter. Graham cites to *Anders* to illustrate this and states the Court imposed a requirement on PCRA counsel to advocate for their clients. However, *Anders* and its progeny do not require counsel to blindly support PCRA claims that lack merit. *Anders* lays out a clear process for appointed PCRA to examine claims put forth by their clients and to judge the merit of said claims. If the claims lack merit, counsel is permitted to withdrawal from the case as long as the attorney authors a brief explaining why each claim lacked merit under *Com. v. Santiago*, 602 Pa. 159, 978 A.2d 349 (2009.[9]

Graham is correct that Attorney Egers is not allowed to act as his adversary but cites to no specific sections of the "no merit" letter to support this contention. Graham does cite to the case *Suggs v. United States*, 391 F.2d 971, 974 (D.C. Cir. 1968) and claims that "important facts that persuaded the United States Supreme Court" in *Suggs* are present in this case. *Suggs* was decided by the United States Court of Appeals for the District of Columbia Circuit, *not* the United State Supreme Court. Furthermore, the only fact Graham cites to from the *Suggs* decision revolves around the government in that case adopting the brief of the defendant's PCRA counsel which clearly did not happen in the present case. Graham is thus unable to meet the burden placed upon him to prove ineffective assistance of PCRA counsel.

---

[9] Attorney Egers authored a 15 page letter in this case that takes the same form as briefs required by the court in *Santiago*.

## CONCLUSION

The July 21, 2016 Order by this Court finding that Graham's claims for ineffective assistance of counsel were meritless should be affirmed.

BY THE COURT:

KATHERINE B. EMERY,
PRESIDENT JUDGE

14