J-A10043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CLARICE SCHILLINGER AND KEEPING KIDS IN SCHOOL PAC, BY CLARICE SCHILLINGER, TRUSTEE AD LITEM | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : : | No. 2266 EDA 2022 |
| PENNSYLVANIA SPOTLIGHT, T/A PA SPOTLIGHT, ERIC C. ROSSO AND JOHN DOE #1 | : : : | |

Appeal from the Order Entered August 1, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2021-16992

BEFORE:   PANELLA, P.J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED JUNE 12, 2023**

Clarice Schillinger and Keeping Kids in School PAC ("KKIS") (collectively "Appellants") appeal the order of the Court of Common Pleas of Montgomery County sustaining the preliminary objections of Pennsylvania Spotlight ("PA Spotlight") and Eric Russo (collectively "Appellees") and dismissing Appellants' complaint with prejudice. After careful review, we affirm.

By way of background, Ms. Schillinger organized KKIS during the COVID-19 pandemic to advocate for "concerned caregivers for the reopening of schools to in-person instruction and to promote and endorse candidates for local school boards in Pennsylvania who support in-person learning." Am.

_____

[*] Former Justice specially assigned to the Superior Court.

Compl., at 2. Appellants assert that KKIS is a bipartisan political action committee (PAC) that is properly registered in all Pennsylvania counties and files timely public financial disclosure reports to detail the sources and amounts of funding it receives from donors in accordance with campaign finance law. Am. Compl., at 2.

Appellants filed a complaint to seek damages from PA Spotlight and Russo for negligent defamation, intentional defamation, and false light invasion of privacy. Appellants claim they sustained substantial injury from false and defamatory statements made in an article published by Pennsylvania Spotlight on its website. The complaint indicates that PA Spotlight "purports to be an accountability and investigative organization building power through research reports, commentary, digital organizing, and tracking organizations who fight against the best interests of the working class." Am. Compl., at 4. Mr. Russo is the executive director of PA Spotlight. Am. Compl., at 4.[1]

The article at issue, published on June 3, 2021, states the following:

**FORMER CONGRESSMAN RYAN COSTELLO AND PAUL MARTINO BIGGEST DONORS TO PAC SUPPORTING QANON SCHOOL BOARD CANDIDATES**

Pennsylvania Spotlight has obtained a new look at additional campaign finance documents for the latest dark money organization working to privatize education. The Keeping Kids in School PAC was formed last year supposedly by a mother in reaction to the COVID pandemic, but these documents reveal former Congressman Ryan Costello as the second-largest funder.

---

[1] Appellants also named "John Doe #1," the author of the anonymous article, as a defendant.

As previously reported, Paul Martino, a venture capitalist and ally to Project Veritas founder James O'Keefe is the largest funder to Keeping Kids in School PAC. The latest campaign finance documents show a late donation by former Congressman Ryan Costello, making him the second-largest funder of the PAC.

The PAC has made headlines for running conspiracy theorists and people who were in attendance at the insurrection for school board positions across eastern Pennsylvania. Costello's donations occurred on May 5th, requiring the PAC to file a late contributions addendum for the $2,500 check. Martino has a long history of funding right-wing candidates and causes.

The Keeping Kids in Schools PAC associated itself with school board candidates in nine counties spanning from Lackawanna County in Northeastern Pennsylvania to Chester County in Southeastern Pennsylvania. The PAC coordinated with the Commonwealth Foundation's dark money network in Pennsylvania.

[The article includes a photo and blurb about a post in "Broad + Liberty":]

Ada Nestor: Our school board election should focus on education, not political conspiracies

Ada Nestor, candidate for West Chester Area School District School Board, is being maligned by anonymous radicals infusing conspiracies into the race.

Written by Michael Torres[,] May 6th

Est. reading time[:] 4 minutes

[The caption below the blurb and photo reads: "*Commonwealth Foundation Communication's Director Michael Torres appears as the author of this candidate supported by the Keeping Kids in School editorial in Broad and Liberty when shared on the popular work communications platform Slack*].

The first story about the launch of the PAC was published by a right-wing website designed to be a news site that writes positively about the Commonwealth Foundation initiatives as a part of the Pennsylvania right-wing echo chamber. A candidate supported by the PAC used another right-wing website designed to be a news site to respond to questions about her readiness for office.

- 3 -

> She used the site to respond to her own social media posts where she embraced conspiracy theories that led to the deadly insurrection. That site is connected to Linda Kerns, a lawyer who worked on behalf of Donald Trump to overturn the election, and the Commonwealth Foundation. Multiple candidates supported by the PAC have also posted pictures of their attendance at the Capitol on January 6th.

> While the PAC was presented in media across Pennsylvania as a grassroots organization, the campaign finance reports demonstrate the ulterior motives of the organization. It's the latest addition to Pennsylvania's list of front groups masking the work of billionaire donors and extremist politicians.

Am. Compl., Exhibit A (hereinafter "the Article").[2]

Appellants took issue with the Article's allegations that KKIS is (1) a "dark money organization," (2) "supposedly" formed by Ms. Schillinger, as a mother concerned for her children's educational development and emotional wellbeing, that (3) has "ulterior motives" and is a "front grou[p] masking the work of billionaire donors and extremist politicians." Complaint, at 7-8.

Appellees filed preliminary objections, arguing *inter alia*, that Appellants failed to sufficiently allege that the statements in the Article were false and defamatory or that the statements were made with actual malice. On August 1, 2022, the trial court granted the preliminary objections and dismissed the complaint on the basis that the Article contained statements of opinion and not actionable defamatory statements. This timely appeal followed.

Appellants raise the following issues for our review on appeal:

---

[2] The article is accompanied by a photo of an individual (who is presumably Mr. Costello) and snapshots of the KKIS PAC registration statement and campaign finance reports that documented a late contribution to KKIS by Costello for Congress in the amount of $2,500.00.

1. Whether the trial court erred in failing to give [Appellants] the benefit of all reasonable inferences as required at the preliminary objection stage.

2. Whether the trial court erred in holding that [Appellees'] tortious statements were statements of opinion and not actionable statements of facts.

3. Whether the trial court erred in failing to recognize that [Appellees'] tortious statements, even if deemed to be statements of opinion, are actionable for implying a provably false factual connotation about [Appellants].

4. Whether the trial court erred in failing to recognize that [Appellees'] tortious statements, even if deemed to be statements of opinion, are actionable for being based on false or misleading statements of fact about [Appellants].

Appellants' Brief, at 3-4.

We begin by setting forth our standard and scope of review on appeal:

Our standard of review in [an] appeal arising from an order sustaining preliminary objections in the nature of a demurrer is *de novo*, and our scope of review is plenary. We recognize a demurrer is a preliminary objection to the legal sufficiency of a pleading and raises questions of law; we must therefore accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts. A preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted.

*Laret v. Wilson*, 279 A.3d 56, 58 (Pa.Super. 2022) (citing *Raynor v. D'Annunzio*, 243 A.3d 41, 52 (Pa. 2020) (citations omitted)).

Defamation is defined "a communication which tends to harm an individual's reputation so as to lower him or her in the estimation of the community or deter third persons from associating or dealing with him or her." *Meyers v. Certified Guar. Co., LLC*, 221 A.3d 662, 669 (Pa.Super. 2019) (citations omitted).

To prevail on a defamation claim, the plaintiff has the burden to prove:

(1) The defamatory character of the communication[;] (2) Its publication by the defendant[;] (3) Its application to the plaintiff[;] (4) The understanding by the recipient of its defamatory meaning[;] (5) The understanding by the recipient of it as intended to be applied to the plaintiff[;] (6) Special harm resulting to the plaintiff from its publication[; and] (7) Abuse of a conditionally privileged occasion.

42 Pa.C.S.A. § 8343(a). To successfully defend against a defamation suit, the defendant may prove "(1) The truth of the defamatory communication[;] (2) The privileged character of the occasion on which it was published[;] (3) The character of the subject matter of defamatory comment as of public concern." 42 Pa.C.S.A. § 8343(b).

In this case, Appellants assert that the trial court erred in determining that Appellants failed to state a claim for which relief might be granted as the Article contained non-actionable statements of opinion.

In determining whether a statement is capable of defamatory meaning, the trial court must also ascertain whether the statement constitutes an opinion. The question of "[w]hether a particular statement constitutes a fact or an opinion is a question of law for the trial court to determine." *Mathias v. Carpenter*, 402 Pa.Super. 358, 587 A.2d 1, 3 (1991). Hence,

In determining whether [a publication is] capable of defamatory meaning, a distinct standard is applied [when] the publication is of an opinion. *Veno v. Meredith*, 357 Pa.Super. 85, 515 A.2d 571, 575 (1986), *appeal denied,* 532 Pa. 665, 616 A.2d 986 (1992). "A statement in the form of an opinion is actionable only if it may reasonably be understood to imply the existence of *undisclosed* defamatory facts justifying the opinion. A simple expression of opinion based on disclosed facts is not itself sufficient for an action of defamation." *Id*. (internal citations omitted); *see also Neish v. Beaver Newspapers, Inc.*, 398

- 6 -

Pa.Super. 588, 581 A.2d 619, 622–24 (1990), *appeal denied*, 527 Pa. 648, 593 A.2d 421 (1991) (editorial criticizing the way appellant handled his job and suggesting replacing him was an opinion not based on undisclosed defamatory facts and, therefore, was not actionable. The Court found that while the statements in the editorial "might be viewed as annoying and embarrassing, they were not tantamount to defamation").

*Kurowski v. Burroughs*, 994 A.2d 611, 618 (Pa.Super. 2010) (emphasis in original).

*Kuwait & Gulf Link Transp. Co. v. Doe*, 216 A.3d 1074, 1085–86 (Pa.Super. 2019).

We recognize that the United States Supreme Court has held that a speaker is not necessarily immune from a defamation suit if he or she couches their statement as an "opinion."

Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications[.]

*Meyers*, 221 A.3d at 671 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990)).

This Court adopted the principles set forth in Restatement (Second) of Torts § 566 which provides that "[a] defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." *See Mathias*, *supra* (applying Restatement (Second) of Torts § 566). The comment to Section 566 states that "[a] simple expression of opinion based on disclosed or assumed nondefamatory facts is

- 7 -

not itself sufficient for an action of defamation, *no matter how unjustified and unreasonable the opinion may be or how derogatory it is*." Restatement (Second) of Torts § 566, cmt. (c) (emphasis added).[3]

As such, "derogatory characterizations without more are not defamatory." ***McCafferty v. Newsweek Media Grp., Ltd.***, 955 F.3d 352, 358 (3rd Cir. 2020) (citing ***MacElree Phila. Newspapers, Inc.***, 674 A.2d 1050 (Pa. 1996)). For example, our Supreme Court has held that an accusation of racism by itself does not constitute actionable defamation; rather, "the accusation must imply more, by for instance suggesting that the accused has personally broken the law to act in a racist manner." ***McCafferty***, 893 A.2d at 845 (quoting ***MacElree***, 674 A.2d at 1055). Similarly, this Court has held that "calling a person a bigot or another appropriate name descriptive of his political, racial, religious, economic, or sociological philosophies gives no rise to an action for libel" as such statements are the speaker's opinion. ***Rybas v. Wapner***, 457 A.2d 108, 110 (Pa.Super. 1983).

Appellants claims that the Article's allegation that KKIS is a "dark money organization" implied that KKIS had engaged in specific conduct by engaging in political spending without disclosing its donors. Appellants argue that the Article's indication that Ms. Schillinger "supposedly" formed KKIS out of

---

[3] Appellants did not challenge the trial court's finding that these principles apply equally to defamation and false light invasion of privacy claims. ***See McCafferty v. Newsweek Media Grp., Ltd.***, 955 F.3d 352, 360 (3rd Cir. 2020) (in both contexts of defamation and false light claims, "an opinion based on disclosed facts cannot be false").

concern for her children's educational development and emotional wellbeing suggests her motive in forming KKIS was actually insincere and fraudulent.

In addition, Appellants contend the Article falsely alleged that KKIS "coordinated with the Commonwealth Foundation's dark money network in Pennsylvania" when the Article disclosed no facts showing any "coordination" involving KKIS. Further, Appellants claim that the Article's assertion that KKIS has "ulterior motives" and is a "front grou[p] masking the work of billionaire donors and extremist politicians" states or implies a myriad of false facts about Appellants, including that KKIS is "complicit in a clandestine enterprise to channel dark money and spread misinformation for nefarious purposes." Appellants' Brief, at 23.

In this case, the trial court determined that the Article's main conclusion was that "KKIS, despite its self-promotion as a bipartisan grass-roots organization founded by the mother of schoolchildren, has supported right-wing candidates by allying itself and coordinating its efforts with the Commonwealth Foundation and other right-wing groups." Trial Court Opinion (T.C.O.), 8/1/23, at 11.

With respect to Appellants' challenges to specific statements within the Article, the trial court determined that these assertions were pure opinions as "nothing in the [A]rticle implies the existence of additional, undisclosed facts that support its conclusions." T.C.O. at 10. The trial court explained that:

> [t]he specific statements in the article that [Appellants] allege to be defamatory must be viewed in the context of these disclosed facts that the article sets forth to support them. The article makes

clear that KKIS discloses its donors in public filed campaign finance reports, and it includes a copy of one such report. The reference to KKIS as a "dark money organization," in this context, cannot be reasonably read as an assertion of fact that the PAC does not disclose its donors. Rather, the statement is an opinion that because KKIS coordinates its efforts with the Commonwealth Foundation, the PAC should be considered part of the Foundation's "dark money network." Likewise, the statement that KKIS serves as a "front group" is a characterization based on the multiple factual statements showing coordination between the PAC and the right-wing organizations. Finally, in the statement that KKIS was formed "supposedly" by a mother in reaction to the COVID-19 pandemic, the word "supposedly" is no more than the verbal equivalent of a raised eyebrow. Read in context, the word suggests, at worst, that despite its self-promoted public image as the project of a concerned mother of schoolchildren, it is coordinating with right-wing groups. Again, the statement – if it is a statement at all – is one of opinion based on disclosed facts.

T.C.O. at 11.

The trial court properly found that the Article's characterization of KKIS as a "dark money organization" did not imply that KKIS failed to comply with its financial disclosure requirements as a political action committee. To the contrary, the Article highlighted that KKIS had filed campaign finance reports that publicly disclosed their two largest donors. When analyzing the Article in its entirety, the Article does not invite the reader to make an inference that KKIS failed to disclose any of its donors, but instead emphasizes that the PAC's two largest donors are a venture capitalist and a politician.[4]

_____

[4] Appellants also argue that the Article falsely insinuated that KKIS withheld undisclosed donor information from the public view in its assertion that PA Spotlight had "obtained *additional campaign finance documents* for the last dark money organization." Appellants' Brief, at 30. As Appellants did not raise this specific allegation before the trial court, it is waived. ***See*** Pa.R.A.P. 302
*(Footnote Continued Next Page)*

- 10 -

Rather, we agree that the Article's characterization of KKIS as a part of a "dark money network" is based on the author's opinion that KKIS had coordinated with the Commonwealth Foundation, a non-profit organization.[5] To the extent that Appellants allege that the Article falsely claimed that KKIS collaborated with the Commonwealth Foundation, the Article sets forth facts to support its conclusion that KKIS aligned with the Commonwealth Foundation, pointing to websites with connections to the Commonwealth Foundation that published articles about the launch of KKIS and subsequent

_____

("[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

Even assuming *arguendo* that this claim was properly presented to the trial court, Appellants' proposed inference is not reasonable as the Article states that it has previously reported on another of KKIS's campaign finance documents which disclosed that Paul Martino, a venture capitalist, and ally to Project Veritas is the largest donor of KKIS. Appellants do not allege that the previous article contained any defamatory statements.

[5] Appellants have never challenged the Article's assertion that the Commonwealth Foundation operates a dark money network. The term "dark money" has been defined as follows:

> Dark money refers to financial influences that affect the outcome of elections--through uncoordinated advocacy of a candidate--without being subject to any campaign finance disclosure requirements. This is done in part through donating to organizations that are not categorized as political committees such as 501(c)(4) groups: a "social welfare" category that includes any group broadly focused on promoting the general welfare of the community.

*A Shield for David and A Sword Against Goliath: Protecting Association While Combatting Dark Money Through Proportionality*, 133 Harv. L. Rev. 643 (2019) (footnotes omitted).

positive content about KKIS. Thus, the Article set forth the basis for its opinion, although Appellants may disagree with its conclusion.

Although Appellants argue that it was derogatory to label KKIS as a "dark money organization" based on its coordination with a "dark money network," Appellants do not assert that term "dark money" implies that the entity has engaged in illegal or criminal conduct. In fact, Appellants acknowledge that after the Supreme Court of the United States issued its decision in ***Citizens United v. Fed. Election Com'n***, 558 U.S. 310 (2010) ruling that the government may not suppress corporate political speech, non-profit organizations and certain corporate entities have been permitted to engage in political spending without disclosing the identities of their donors.

Accordingly, Appellants have not set forth a cause of action for defamation for this expression of opinion in the Article, which sets forth the basis for its conclusions and does not imply the existence of additional, undisclosed facts. Although Appellants may be offended by Article's content, we reiterate that "[a] simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, *no matter how unjustified and unreasonable the opinion may be or how derogatory it is*." Restatement (Second) of Torts § 566, cmt. (c) (emphasis added).

For the foregoing reasons, we affirm the trial court's order granting Appellees' preliminary objection and dismissing the complaint.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2023